**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **VIVIAN CASPER,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. ___________** |
| **GENEVIEVE WEST, in her official capacity as Chair of Department of Language, Culture & Gender Studies; ABIGAIL TILTON, in her official capacity as Dean of the College of Arts & Sciences; CARINE FEYTEN, in her official capacity as Chancellor and President; ANTHONY YARDLEY, in his official capacity as Director of Employee Relationships, HR Compliance & Equity; and KATHERINE ANTWI GREEN, in her official capacity as General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer,** | : | |
| **Defendants.** | : | |

---

## ORIGINAL COMPLAINT

---

**NOW COMES** Dr. Vivian Casper ("Plaintiff" or "Casper") and files this *Original Complaint* ("Complaint"). In support hereof, Plaintiff respectfully states as follows:

## I. NATURE OF THE CASE

1. In the First Amendment to the United States Constitution, the citizens of America preserved for themselves freedom of speech without government infringement. In the Age Discrimination in Employment Act ("ADEA"), Congress forbade discrimination by employers

against employees due to their age. Vivian Casper, an 85-year-old teacher at Texas Woman's University ("TWU" or "University") has been denied both of these guarantees.

2. Since Casper reached her early seventies, the Defendants, individually and collectively at various times, have been trying to force her to retire. Defendants have taken away the courses she likes to teach and assigned younger employees to teach them, assigned her the service assignments she most disliked while giving the ones she most enjoyed to younger employees, and steered students away from her courses, both explicitly and through covert scheduling maneuvers. Knowing they could not outright force her to leave, the Defendants arranged to completely suspend Casper from teaching, thinking it would do the trick. But Casper still persisted. After Casper notified the EEOC of the Defendants' discriminatory actions against her, Defendants retaliated by issuing another suspension: this time prohibiting Casper from performing her last remaining professorial responsibility: serving on faculty committees.

3. The Defendants based this latest suspension on Casper's private comments to a fellow colleague regarding "wokeness." This asserted justification violates Casper's entitlement to freedom of speech provided by the First Amendment. The Defendants' decision to suspend Casper for protected speech is unconstitutional retaliation on the basis of speech and viewpoint discrimination. Furthermore, it violates the ADEA.

## II. <u>THE PARTIES</u>

4. Plaintiff Casper is 85 years old. She is a resident of Denton, Denton County, Texas, and a United States citizen.

5. Casper is an employee, as defined by the ADEA. Plaintiff works for Texas Woman's University as a tenured associate professor.

6. Defendants Genevieve West, Abigail Tilton, Carine Feyten, Anthony Yardley, and Katherine Antwi Green (collectively, the "Defendants"), are and were at all times relevant to this Complaint, employees of the University.

7. Defendant Abigail Tilton ("Tilton") is the Dean of the College of Arts & Sciences of the University. Tilton is sued both individually and in her official capacity as the Dean of the College of Arts & Sciences of the University.

8. Defendant Genevieve West ("West") is the Chair of the Department of Language, Culture & Gender Studies of the University. West is sued both individually and in her official capacity as the Chair of the Department of Language, Culture & Gender Studies of the University. Defendant West is supervised by Defendant Tilton.

9. Defendant Carine Feyten ("Feyten") is Chancellor and President of the University. Feyten is sued both individually and in her official capacity as the Chancellor and President.

10. Defendant Anthony Yardley ("Yardley") is Director of Employee Relations, HR Compliance & Equity of the University. Yardley is sued both individually and in his official capacity as the Director of Employee Relations, HR Compliance & Equity.

11. Defendant Katherine Antwi Green ("Green") is General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer. Green is sued both individually and in her official capacity as the General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer.

12. The Defendants, both independently and in consultation with each other, participated in creating a hostile work environment for the purpose of seeking to cause Casper to retire due to her age, in violation of the ADEA.

13. The Defendants, both independently and in consultation with each other, retaliated against Casper due to her participation in protected activities, in violation of the ADEA.

14. The Defendants, both independently and in consultation with each other, participated in the retaliatory and unconstitutional suspension of Casper due to her protected speech.

15. The Defendants were aware of the discriminatory, retaliatory, and unconstitutional actions taken against Casper, and did not instruct University personnel, including other Defendants, to change or reverse those actions to comply with constitutional and statutory mandates.

## III. JURISDICTION AND VENUE

16. This is a civil rights and age discrimination action that raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, all as amended.

17. This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

18. This Court can award the requested declaratory relief under 28 U.S.C. §§ 2201-02; the requested injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 29 U.S.C. § 216 and 42 U.S.C. § 1988.

19. Venue is proper in this District and this Division under 28 U.S.C. § 1391(b) because Defendants reside in this district and because all the acts described in this Complaint occurred in this District and this Division.

## V. BACKGROUND AND FACTUAL INFORMATION

20. In 1969, University hired Casper to serve as an Instructor in English. At the time, Casper was 32 years old. Casper was promoted to Assistant Professor of English in 1971 and earned tenure in 1978. In over 53 years of serving the University, the University's students, and the University family and community, Casper has taught more than thirty (30) different

undergraduate and graduate courses. Casper has also published numerous professional papers, articles, essays, and reviews and has spoken heavily throughout the United States on topics related to her research and scholarship. Additionally, Casper has served on numerous University committees and served as the faculty advisor and sponsor for student groups and organizations.

21. Casper's performance as a professor has been exceptional. Casper has consistently been trusted as a reference for numerous students, including a recent prestigious internship with the Congressional Black Caucus. Casper is a recognized scholar in her areas of expertise—particularly modern drama—and a highly effective educator. For Casper's service and devotion to her students, Casper has been honored on multiple occasions, including being recognized as a "Favorite Faculty Member," The Lasso Pioneer Faculty of the Year 2010 Award, and multiple other awards and recognition. In January 2022, Casper received a "merit award." The "merit award" of compensation was provided to Casper "on the basis of [Casper's] performance" in "recognition of [Casper's] valuable performance contribution…." Additionally, a Spring 2022 *Post-Tenure Performance Review* by the University's Peer Review Committee gave Casper an overall rating of "Effective," concluding Casper was "Effective" in all three categories of Teaching, Scholarship, and Service. In the category of Teaching, the Committee noted that Casper "regularly…meets each and every student in her office in order to discuss the class examination," "regularly arranges for students to attend theatrical performances…[that] are relevant…to the course material," and "students who pass Dr. Casper's classes are well prepared to teach literature in their own classrooms…." In the category of Scholarship, the Committee noted that Casper is "active in terms of scholarship in her areas of specialty, particularly modern drama." In the category of Service, it was noted that Casper served as a "faculty advisor" and served on multiple "committees" before "she was removed from the classroom" in February of 2021 and, the Committee further noted, Casper "possesses a wealth of institutional memory and anecdotes."

22. Casper's life's purpose is to teach students about her lifelong love of literature, language, and writing. As long as she is able, Casper wants to instruct students in the areas of her

expertise and help them grow as scholars, educators, and people. Given her love for her position, Casper went above and beyond the minimum professorial responsibilities. She loved serving on faculty and student committees, bringing students to live performances, and counseling them on how to achieve their educational goals. Casper finds no greater joy than passing on her own love of learning to her students.

**A. For many years, Defendants have attempted to oust Casper due to her Age.**

23. Pursuant to the terms of the University's Faculty Promotion and Tenure policy, Casper—a tenured professor—must remain in the continued employment of the University absent certain specified circumstances, including: (a) termination "for cause" with due process, (b) voluntary retirement, (c) resignation, (d) termination as a result of a bona fide financial exigency or program termination or reduction, or (e) her own inability to perform due to physical or mental incapacity. In other words, in order to remove Casper from her position (short of establishing her incapacity or a bona fide financial exigency), the Defendants would be required show just "cause" and afford Casper due process, or force her to resign or retire. Defendants have chosen the latter course.

24. For the past several years, Defendant West has been trying to push Casper to either leave the school or retire due to her age. First, soon after becoming Casper's immediate supervisor in or around 2009, West approached Casper in her office and asked Casper when she planned to retire. Casper replied that she did not know and did not have any plans to retire.

25. Shortly thereafter, West again raised the issue of Casper's retirement, offering Casper the unsolicited opinion that Casper should consider retiring because doing so would be financially advantageous for Casper. At the time, Casper was 73 years old. Casper again stated that she had no plans to retire. West demonstrated visible disappointment at Casper's response.

26. Upon learning that Casper had no intention to retire, West embarked on a pattern of behavior designed to make Casper's employment as miserable as possible to force Casper to resign or retire.

27. From 2009 through the present date, West has continued to persist, in an ongoing basis, in efforts designed to force Casper to retire.

28. Additionally, West implemented changes to the organization and curriculum of Casper's department which have been detrimental to Casper. West hired numerous younger adjuncts and instructors and assigned the younger instructors to teach many of the courses that Casper previously taught on a regular basis. West also gave the younger adjunct instructors priority in selecting course assignments over Casper (who, at that point, was a tenured professor of over 35 years). West's pattern of hiring younger instructors to assume Casper's teaching duties has continued since at least 2014.

29. In 2014, Defendants used Casper's annual teaching evaluation to attempt to force her out of the department. Although Casper's performance that year had been impeccable, West denied her an "Outstanding" rating on her 2014 evaluation. West conducted the evaluation unfairly, and further, West took the additional and unnecessary step of drafting a memorandum, in addition to the evaluation, that attacked Casper's performance as a professor. West filed this memorandum in Casper's official record. Casper viewed the allegations as libelous and otherwise unlawful, so she explored legal action.

30. Casper objected to the filing of West's memorandum—which she viewed as libelous and unfair—in her personnel file. Casper retained counsel to address the matter. On October 2, 2015, Casper's attorney sent a letter to the University demanding the removal of the damaging memorandum from Casper's file. In connection with this demand, Casper's attorney also set forth various other allegations of unfair, improper, and unlawful actions toward Casper by Defendant West, including many of the actions described in the preceding paragraphs.

31. In response to Casper's letter, the University's General Counsel agreed to remove the libelous memorandum from Casper's file and assign her to a different advisor (removing West as her supervisor), on the condition that Casper resign or retire from the University. Upon

information and belief, West demanded the condition of Casper's resignation be included in the settlement offer.

32. West took other actions to undermine Casper's status in the department in her efforts to force Casper to leave or retire. West undermined Casper's professional reputation among graduate students in her department by nullifying a failing grade in Casper's Victorian Literature course for a failing student who did not attend the final exam. Casper never taught graduate courses again. By overriding Casper's grade award, West created the impression that Casper required supervision. West's conduct caused frequent speculation and gossip regarding Casper's performance and competence within the small department, undermined her authority, and caused Casper embarrassment and reputational damage.

33. Since around 2014, West has been steering students away from Casper's courses. West limited to students the courses taught by Casper that were available in the rotation schedule to juniors and seniors, which resulted in the pool of available students effectively shrinking to only English majors. Then, knowing that students prefer online courses, West created a new online Poetry course to compete with Casper's in-person Poetry course—without even telling Casper. And while West refused to teach evening or night courses, she pressured Casper to do so. Upon information and belief, West engaged in the above-described conduct in order to reduce enrollment in Casper's courses, so the courses would be cancelled by the University.

34. Prior to West's actions, Casper had never had any issues with low student enrollment in her courses, and accordingly, her courses were rarely cancelled. However, the above-described conduct by West caused Casper's courses to suffer a steep drop in enrollment. Students quickly filled up the online Poetry course, leaving too few students among the pool of English majors to take Casper's in-person course. West then cancelled Casper's Poetry course.

35. As an expert in modern drama, Casper was the only instructor who had ever taught the University's Drama course. However, in Fall 2015, before students had even had a chance to enroll in their spring 2015 courses, West cancelled Casper's spring 2015 Drama course.

36. Upon information and belief, West did not cancel the courses of other, younger instructors, even when such courses had lower enrollment than Casper's Poetry or Drama courses.

37. In further efforts to drive her out, West arranged for other professors to teach courses Casper enjoyed and regularly taught including one of Casper's favorite courses on Shakespeare. West also delayed adding an Advanced Grammar and Composition course to the fall 2015 semester until after the schedule's initial publication. Casper had taught Advanced Grammar and Composition in the mornings since the course's inception in the department. But because West added Advanced Grammar and Composition to the schedule late and West had already scheduled Casper's in-person Poetry course for mornings, Casper was committed to teaching Poetry instead and not available to teach Advanced Grammar and Composition. West hired a younger adjunct to teach Advanced Grammar and Composition and subsequently cancelled Casper's Poetry course (which West planned to do from the outset, as she was well aware that students would choose the online course instead). The following semester, West again denied Casper the opportunity to teach Advanced Grammar and Composition, even though it was the only course Casper specifically requested. The adjunct hired to replace Casper as the course instructor was, on information and belief, under the age of 40.

38. Over the years, West replaced Casper with younger instructors on many occasions. In Shakespeare, West replaced Casper with Gray Scott who was more than thirty years younger than her at the time. In Advanced Grammar and Composition, West replaced Casper with 37-year-old lecturer Jamie Barker. Barker was also appointed to teach Casper's Modern African American Drama course. Most recently, West brought in 33-year-old Daniel Ernst to teach Casper's Advanced Grammar and Composition course in the Fall semester of 2022. Also in the Fall semester of 2022, West assigned Esther Houghtaling, Keri Overall, and Jennifer Phillips-Denny to teach Casper's Intro to Literature by Women, Intro to Literature, Drama, Fiction, and Literature by Women courses. Upon information and belief, Houghtaling and Overall are all under the age of 40.

39. It is clear that West's actions were (and continue to be) targeted toward causing Casper to resign or retire. In 2018, Casper was making examination copies when a letter printed from the machine. Casper did not wish to snoop but glanced over the letter to see who the author was so she could return it to him or her. The letter, which was written by a fellow professor and addressed to West, indicated that West was welcoming assistance from other professors in trying to oust Casper.

40. West has begun using unfavorable service assignments to coerce Casper to leave or retire. Before the school year begins, each faculty member submits a list of service assignments they wish to do and those which they definitely do not want. Casper's only request was not to have a program-assessment assignment, but West gave her one. West's only explanation for the assignment was that nobody wanted to do assessments—which was untrue. West also removed Casper from her student advising position, an assignment Casper had years of experience in and greatly enjoyed. West had received no complaints regarding Casper's student advising performance. West replaced Casper with a younger and untenured recent hire under the age of 40. Further, West appointed faculty advisors who would counsel students not to take Casper's courses, causing Casper's enrollment numbers to decline. West also removed Casper as chair of the departmental scholarship committee, despite the fact that Casper had performed impeccably in that position for many years and there was never a complaint about her work. West justified this action by explaining that she "knew" Casper would not have wanted to continue in the role since the award process was transitioning online. This was not true. West then filled the committee with the substantially younger faculty members, whom she preferred.

41. In 2020, West bragged at a meeting that all faculty present had been given a course off to do research. Casper, who was present at the meeting, stated that she had not been given a course off. West did not defend her disparate treatment of Casper. The rest of the room was stunned. On information and belief, the faculty members who had been given a course off to do research (*i.e.*, everyone other than Casper) were significantly younger than Casper.

42. In early 2021, Defendants took their efforts to remove Casper one step further. During Casper's ENG 3203.02 course in the fall semester of 2020, one of Casper's students was struggling. Casper reached out to encourage her and see how she could help her. As part of her encouragement Casper told the student not to give up and that if she continued to work hard she would succeed. Initially, the student appeared receptive, but ultimately stopped attending classes and did not sit for the final exam. Seizing this student's legitimate failure as an opportunity to finally get rid of Casper, the Defendants falsely accused Casper of discriminating on the basis of race and disability and of demeaning students. The Defendants then removed Casper from most of her roles within the University and suspended her from teaching. Defendants have not allowed Casper to teach since. When Casper met with Green and the then provost, she was again instructed to retire. A separate state action is currently proceeding in state court regarding the Defendants' violations of Casper's constitutional rights to due process and freedom of speech in connection with the 2021 suspension. While Defendants have tried to justify their action as based on Casper's comments—a justification that violates the First Amendment—events that occurred prior to and after Casper's 2021 suspension reveal that another significant motivation is to force Casper out due to her age.

43. In October of 2022, the University released the spring 2023 semester course schedule. Casper again was not given any courses to teach

44. While unable to overtly fire Casper because of her age, the Defendants have essentially done so by removing her from all courses and not letting her teach—her primary responsibility as a tenured professor. The Defendants have repeatedly encouraged Casper to retire, stating that Casper will never be permitted to teach at the University again. The Defendants plan to keep Casper suspended from teaching until, one way or another, she is gone.

**B. Casper files an EEOC Charge.**

45. The Defendants want Casper out of the University and are willing to take drastic action to force her to retire or resign. In furtherance of this goal, Defendants have created a hostile working environment for Casper and suspended Casper due to her age.

46. On October 19, 2022, Casper notified the EEOC that the Defendants were discriminating against her because of her age. Casper submitted an EEOC Charge outlining the discriminatory acts of the Defendants and requesting the EEOC investigate the Defendants for discrimination based on Casper's age (the "Charge"). In her Charge, Casper noted that the Defendants' discriminatory acts were "ongoing" and that new instances of discrimination had taken place as recently as "a few days" prior to the date the Charge was filed. The Charge was filed simultaneously with the Civil Rights Division of the Texas Workforce Commission ("TWC").

47. The EEOC issued Casper a right to sue letter on or about October 19, 2022. In the letter, the EEOC stated it had made no determination as to the merits of Casper's claims and notified her she had a private right to sue Defendants within ninety (90) days of receiving the letter.

48. After becoming aware that Casper had reported their acts of age discrimination to the EEOC, the Defendants retaliated against Casper for filing the Charge, as described below.

**C. University Defendants Suspend Casper for her Protected Speech and in Retaliation for her Age Discrimination Complaint.**

49. On October 12, 2022, Casper responded to a fellow faculty member in a faculty meeting. The faculty member made statements that indicated "wokeness." Casper provided a truncated response -- "[y]ou should read more," planning to address the topic of "wokeness." Without being able to complete her thought, West demanded for clarification. Casper declined to engage in a verbal altercation with West. Within the hour after the conclusion of the faculty meeting, Casper emailed West and the fellow faculty member and explained her position on "wokeness" or "wokeism." "Wokeness" is considered being alert to and concerned about social injustice and discrimination. "Wokeness" has been a hot topic of debate throughout the United

States and on college campuses all across the country. Casper was simply expressing her positions in her private capacity, expressing her private view, on a matter of public concern.

50. After that interaction, Casper contacted West to let her know that fellow faculty members had spoken rudely to her but that West did not object or address that treatment of Casper. Upon information and belief, these faculty members were significantly younger than Casper. Instead of responding with neutrality or addressing Casper's concerns, West seized upon the opportunity to make another attempt at forcing Casper out due to her age, retaliate at Casper for filing a complaint with the EEOC, and punish her for expressing a disfavored viewpoint. West and Yardley, joined by the Defendants and with approval of Tilton and Feyten, suspended Casper based on the four words Casper spoke when she was trying to address "wokeness" at the faculty meeting before she was interrupted. Casper sent a follow-up email explaining that the truncated four words were addressing "wokeness."

51. Neither West nor the other Defendants investigated Casper's claim that she was mistreated by fellow faculty members. In fact, the fellow faculty members were not questioned or disciplined for their treatment of Casper. Instead, Defendants immediately disciplined Casper and removed her from her role as a tenured professor. Casper has been suspended indefinitely.

52. On November 4, 2022, West sent Casper a letter. In the letter, West stated that the University was investigating an allegation of unprofessional conduct in violation of the University's standards of conduct. The letter notified Casper that the Defendants had suspended her from serving on University committees pending the investigation, effective immediately. The letter expressly forbade Casper from communicating with students, faculty, or staff, including on social media, about the investigation. No further action has been taken by the University as part of this investigation. Casper has been suspended indefinitely from serving on any University committee since that date. Casper also remains permanently suspended from teaching, advising students, and all other duties of her profession.

53. Also on November 4, 2022, Casper received a letter from Yardley, the University's Director of Employee Relations, HR Compliance & Equity. The letter likewise accused Casper of failing to adhere to her faculty responsibilities in violation of the University's code of conduct. It laid out the procedures for the investigation. The letter also instructed Casper that she was prohibited from retaliating against any participant in the investigation.

54. Despite both letters' generally citing to the University's *02.330 Faculty Responsibilities, Standards of Conduct, and Disciplinary Process* to explain Casper's violations, they do not cite the relevant section(s), or provide the date of the alleged incident, the involved individuals, the factual allegations supporting the alleged policy violations, or any other information that could possibly help Casper understand what she has been charged with doing. Despite Casper's requests for documents and information to purportedly support her suspension and her request for the University to follow institutional policies and procedures, Green flatly refused and pushed forward with trampling on Casper's constitutional rights. By not providing Casper this information, the University failed to provide reasonable notice.

55. Upon information and belief, West incited and encouraged the University and the other Defendants to suspend Casper, allegedly for the statement she made about "wokeness" during the October 12, 2022, communications.

56. Upon information and belief, Defendants' suspension of Casper was in retaliation for filing the Charge with the EEOC.

57. Section III of *02.330 Faculty Responsibilities, Standards of Conduct, and Disciplinary Process* lays out a progressive system of discipline, beginning with an oral warning. By suspending Casper without warning, the University jumped ahead four steps, in contravention of their own policy.

58. Defendants have attempted to justify Casper's recent suspension based on Casper's statements addressing "wokeness" in a faculty meeting and follow-up email exchange. However, that speech is constitutionally protected. Casper's comments did not cause any disruption, have a

detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impede the performance of either Casper or the fellow faculty member's duties. Nor did the speech interfere with the regular operation of the University. Defendants' reliance on Casper's protected speech to justify her suspension is unconstitutional retaliation under the First Amendment to the United States Constitution or, in the alternative, unlawful retaliation under the ADEA.

59. Defendants have repeatedly denied and overlooked Casper's repeated requests to be assigned to a new supervisor in light of West's numerous attempts to push Casper out of her University employment. In one circumstance, University's representative stated in writing Casper could be assigned to a new supervisor and away from West's nefarious acts, but Casper would have to agree to resign or retire at the end of the academic year. In doing so, Defendants again demonstrated their intent to push Casper to retire due to her age.

## V. **ALLEGATIONS OF LAW**

60. At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants, who acted under color of a statute, regulation, custom, or usage of the State of Texas.

61. Casper has exhausted her administrative remedies for relief against the Defendants for their violations of the ADEA. Casper filed a Charge with both the EEOC and the TWC. The EEOC dismissed the Charge and granted Casper a right to sue the Defendants for her discrimination claims.

62. By filing the Charge, Casper likewise exhausted her administrative remedies with respect to her claims of retaliation subsequent to the filing of her Charge, as the Defendants' acts of retaliation arise out of (*i.e.* "grow from") Casper's Charge.

63. The University and the University Defendants in their official capacities must abide by the First Amendment to the United States Constitution which is applied to the State of Texas through the Fourteenth Amendment to the United States Constitution.

64. The Defendants knew or should have known that they were violating Casper's constitutional and statutory rights by trying to force her out of her job as a tenured professor because of her age and suspending her indefinitely because of the private and personal views she expressed.

65. Casper has no adequate or speedy remedy at law to correct the deprivation of her rights.

66. The Defendants' actions, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

67. The Defendants' retaliatory actions are not narrowly tailored as applied to Casper because Casper's expression does not implicate any of the legitimate interests the Defendants may have.

68. Unless the suspension is enjoined and Casper is returned to her position as a fully tenured professor with teaching and committee roles, she will continue to suffer irreparable injury.

69. Under 42 U.S.C. § 1983 and 1988, Casper is entitled to appropriate relief invalidating Defendants' challenged decisions.

## VI. CAUSES OF ACTION

### COUNT ONE
### Violation of the Age Discrimination in Employment Act
### Hostile Work Environment
### (29 U.S.C. §§ 621-634)

70. Casper repeats and realleges each of the allegations in paragraphs 1 through 67 hereof, as if fully set forth herein.

71. At all times relevant to this complaint, Casper has been over the age of 40. When Defendant West was hired as Casper's supervisor in 2009 and began targeting Casper due to her age, Casper was 73 years old.

72. At all times relevant to this complaint, Casper has been exceedingly well qualified to perform the duties and responsibilities of her position. Over the course of her 53-year career at the University, Casper has been widely recognized for her teaching abilities and honored by her students and peers for her service to the University. She has received teaching commendations and, prior to the discriminatory circumstances described herein, had received only positive performance reviews.

73. From 2009 through the present date, Defendants have harassed Casper, through words and actions, based on her age. Defendants' acts of harassment against Casper include, without limitation, the following:

74. The Defendants, including Defendant West, have aided, abetted, incited, and/or coerced the University in furtherance of Casper's harassment.

75. The severe and pervasive nature of Casper's harassment created an objectively intimidating, hostile, and offensive work environment. Defendant's persistent harassment of Casper resulted in, without limitation, the following effects:

a) she was repeatedly asked when she would retire and encouraged to retire;

b) she was repeatedly undermined and subject to intentional professional embarrassment and reputational damage;

c) her peers were solicited and recruited to "join" Defendant West in acting against her; and

d) she was repeatedly subject to circumstances—intentionally manufactured by Defendants—causing low student enrollment in her courses and, ultimately, cancellation of her courses.

76. Due to the severe and pervasive acts of Defendants, Casper suffered humiliation, public disgrace, reputational damage, and mental and emotional distress.

77. The Defendants were aware of the pervasive harassment of Casper. Casper complained to University officials—including Defendants Feyten, Tilton, and Green—of her treatment by Defendant West. Specifically, in October 2015, Casper notified the University—via a letter from her then-attorney—about acts that West and her superiors had perpetrated against her, including libel, damage to Casper's professional reputation, reassignment of her courses to younger instructors, and intentional harm to Casper's enrollment numbers. Defendants acknowledged receipt of Casper's letter but did not investigate Casper's claims or take any action to end her mistreatment. In response to her claims, Defendants instead attempted to coerce Casper to leave by conditioning settlement of Casper's claims upon her retirement or resignation. In other words, the University and its decision-making officials (including, upon information and belief, Defendants) ratified Defendant West's harassment of Casper. Again, before and throughout 2021, Casper met with and complained about Defendant West's treatment of her to University officials -- including Defendants Feyten, Tilton, and Green. Even after filing a lawsuit and an EEOC complaint, University officials refused to assign Casper to another supervisor and refused to remove Defendant West from that role, which emboldened Defendant West to continue to attempt to push Casper into retirement, remove her roles and duties with the University, and trample on her constitutionally protected rights.

78. The Defendants marginalized Casper while treating younger, similarly situated and even less qualified employees more favorably. Specifically, the Defendants replaced Casper in the courses she enjoyed teaching with younger, less qualified faculty and adjuncts. The Defendants gave younger professors precedence in selecting assignments over Casper. The Defendants undermined Casper's professional reputation. The Defendants directed students away from Casper's courses and arranged the schedules so that they would not get sufficient enrollment. The

Defendants assigned Casper service assignments she did not want and did not give her service assignments she wanted—those assignments went to younger professors. The Defendants did not give Casper a course off to do research but gave courses off to other, younger professors. The Defendants indefinitely suspended Casper from teaching on baseless, unconstitutional grounds. They then later suspended her from serving on faculty committees.

79. Casper suffered damages because of the Defendants' unlawful discriminatory actions.

80. By ignoring Casper's legitimate complaints of harassment based on age and ratifying, joining, and permitting further harassment by attempting to force her retirement, all Defendants willfully violated Casper's rights under the ADEA.

**COUNT TWO**
**Violation of the Age Discrimination in Employment Act**
**Retaliation**
**(29 U.S.C. §§ 621-634)**

81. Casper repeats and realleges each of the allegations in paragraphs 1 through 78 hereof, as if fully set forth herein.

82. Casper was 85 years old and qualified for her position when Defendants suspended her.

83. Casper engaged in protected activity by filing a Charge with the EEOC and TWC concerning the Defendants' discriminatory treatment based on Casper's age.

84. Upon information and belief, Defendants received notice of Casper's Charge within days of its filing.

85. Only a few short weeks later, on November 4, 2022, the Defendants suspended Casper from serving on faculty committees. After her 2021 suspension, faculty committee participation was Casper's last remaining employment duty.

86. Removal from committees is a substantial employment action that would dissuade a reasonable professor from making or supporting a discrimination claim.

87. Casper's suspension from committee participation is permanent.

88. Casper's suspension adversely affects the terms, conditions, and benefits of her employment.

89. Although Defendants stated that Casper was suspended due to her comments, she was actually suspended in retaliation for her Charge.

90. Casper suffered damages because of the University Defendants' unlawful discriminatory actions.

91. The Defendants willfully violated Casper's rights under the ADEA.

**COUNT THREE**
**Violation of Casper's First Amendment Right to Freedom of Speech Retaliation**
**(42 U.S.C. § 1983)**

92. Casper repeats and realleges each of the allegations in paragraphs 1 through 89 hereof, as if fully set forth herein.

93. By punishing Casper for expressing her views regarding "wokeness," the Defendants have retaliated and are retaliating against Casper for exercising her First Amendment rights.

94. On October 12, 2022, Casper responded to a fellow faculty member in a faculty meeting. The faculty member made statements that indicated "wokeness." Casper provided a truncated response -- "[y]ou should read more," planning addressing the topic of "wokeness." Without being able to complete her thought, West asked clarification. Casper declined to engage in a verbal altercation with West. Within the hour after the faculty meeting concluded, Casper emailed West and the fellow faculty member and explained her position on "wokeness" or

"wokeism." "Wokeness" is considered being alert to and concerned about social injustice and discrimination. "Wokeness" has been a hot topic of debate throughout the United States and on college campuses all across the country. Casper was simply expressing her positions in her private capacity, expressing her private view, on a matter of public concern.

95. Even if Casper's critique of "wokeness" was considered to fall within the scope of her official duties, it is within the scope of her teaching and scholarship, and thus, she was speaking as a private citizen.

96. When Casper expressed her response to perceived "wokeness," she was speaking on a matter of public concern.

97. Casper's interest, as a professor at a public university, in discussing matters of public concern in the context of teaching and scholarship outweighs Defendants' interest in the efficient provision of services.

98. Casper's speech never prevented Defendants from efficiently providing services (or even threatened to do so).

99. Casper's speech, regardless of how it is delineated, is protected expression.

100. The Defendants took retaliatory and unconstitutional actions against Casper using their authority as state officials.

101. The Defendants' retaliatory and unconstitutional actions taken against Casper would deter a person of ordinary firmness from exercising her right to free speech in the future.

102. The Defendants' retaliatory and unconstitutional actions taken against Casper constitute adverse employment actions.

103. The Defendants took these retaliatory and unconstitutional actions against Casper because of the views she expressed regarding "wokeness."

104. The Defendants retaliatory and unconstitutional actions chill Casper's ability to engage in constitutionally protected speech.

105. The Defendants took these retaliatory and unconstitutional actions against Casper because of the viewpoint and content of Casper's speech.

106. The Defendants' retaliatory and unconstitutional actions against Casper violate her right to free speech under the First Amendment to the U.S. Constitution.

**COUNT FOUR**
**Violation of Casper's First Amendment Right to Freedom of Speech**
**Retaliation**
**(42 U.S.C. § 1983)**

107. Casper repeats and realleges each of the allegations in paragraphs 1 through 103 hereof, as if fully set forth herein.

108. By punishing Casper for expressing her views on "wokeness," the Defendants have engaged in content and viewpoint discrimination in violation of the First Amendment.

109. The Defendants evaluated the content and viewpoint of Casper's speech to determine whether they would take any adverse employment actions against her based on her speech regarding "wokeness."

110. The Defendants considered the viewpoint of Casper's speech when they decided to suspend her.

111. The First Amendment to the United States Constitution protects Casper's expression regarding "wokeness."

112. The Defendants have punished Casper for engaging in expression the First Amendment protects and have engaged in impermissible viewpoint- and content-based discrimination.

113. The Defendants' retaliatory and unconstitutional actions against Casper have chilled her ability to engage in constitutionally protected speech.

114. Defendants' retaliatory and unconstitutional actions against Casper violate her right to free speech under the First Amendment to the United States Constitution.

## VIII. CONDITIONS PRECEDENT

115. All conditions precedent to the relief being sought by Plaintiff, in this matter, have been performed or have occurred.

## IX. PRAYER

WHEREFORE, Plaintiff Vivian Casper respectfully requests that this Honorable Court enter judgment against the Defendants and provide Casper with the following relief:

1. A declaratory judgment that the Defendants violated the ADEA by creating a hostile work environment and by retaliating against her for reporting the age discrimination she experienced.

2. A declaratory judgment that the Defendants violated the First and Fourteenth Amendments of the United States Constitution by suspending Casper based on her protected speech and without providing her with proper notice.

3. A temporary restraining order, a preliminary injunction, and a permanent injunction ordering the Defendants sued in their official capacities, their agents, officials, servants, employees, and any other persons acting on their behalf:

    a. To refrain from taking any disciplinary, punitive or other adverse actions against Casper pursuant to the investigation detailed in the November 4, 2022 letters, or pursuant to the earlier suspension from teaching based on false accusations of disability discrimination and demeaning conduct, or on the basis of Casper's age or protected speech.

    b. To restore Casper to full service on faculty and student organization advising committees, and to restore Casper to a full course load to teach. Further, to restore Casper's ability to choose the courses she wants to teach and regularly taught and not, through explicit or covert means, attempt to prevent her from teaching those courses.

    c. To refrain from steering students away from Casper's courses.

4. All reasonable and necessary attorney's fees;

5. All reasonable and necessary costs; and

6. Such other and further relief, general or special, at law or in equity, to which Casper may show herself justly entitled.

Respectfully submitted,

**FOX ROTHSCHILD LLP**
Saint Ann Court
2501 North Harwood Street, Suite 1800
Dallas, TX 75201
Telephone: 214.231.5745
Facsimile: 972.404.0516

BY: *\/s/ Christian Dennie*
Christian Dennie
TX State Bar No. 24045775
cdennie@foxrothschild.com

***ATTORNEY FOR PLAINTIFF***