**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| VIVIAN CASPER,<br>*Plaintiff,*<br><br>v.<br><br>GENEVIEVE WEST, in her official capacity as Chair of Department of Language, Culture & Gender Studies; ABIGAIL TILTON, in her official capacity as Dean of the College of Arts & Sciences; CARINE FEYTEN, in her official capacity as Chancellor and President; ANTHONY YARDLEY, in his official capacity as Director of Employee Relationships, HR Compliance & Equity; and KATHERINE ANTWI GREEN, in her official capacity as General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer,<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:23-cv-00042-ALM |

---

**DEFENDANTS' MOTION TO DISMISS**

---

TO THE HONORABLE JUDGE AMOS L. MAZZANT, III:

Defendants Genevieve West, Abigail Tilton, Carine Feyten, Anthony Yardley, and Katherine Antwi Green, (collectively "Defendants") respectfully file this Defendant's Motion to Dismiss Plaintiff's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).

## ISSUES PRESENTED

1. Casper has not stated claims falling within the *Ex parte Young* exception to sovereign immunity because she does not seek proper prospective relief against officials with an enforcement connection to the asserted First Amendment violations. Are Casper's claims against the TWU officials barred by sovereign immunity?
2. Casper has not suffered a materially adverse employment action to support her First Amendment retaliation claim. Should both claims be dismissed under Rule 12(b)(6)?

3. Casper did not speak as a private citizen on a matter of public concern. Should Plaintiff's First Amendment claims be dismissed for failure to state a claim?
4. Should Casper's First Amendment claim alleging content and viewpoint discrimination be dismissed for failure to state a claim, given that Casper did not speak on a matter of public concern and her case does not implicate academic freedom?
5. Plaintiff requests relief related to her prior administrative leave from teaching duties that were the subject of a previously dismissed state court lawsuit. Is her requested relief related to the student complaint and paid administrative leave from teaching duties barred by *res judicata*?

## BACKGROUND

### I. Factual Background.

Casper is and remains a tenured professor at Texas Woman's University with full pay and benefits. This is one of three lawsuits Casper has filed against TWU since 2021. Her first lawsuit was based on Casper being placed on paid administrative leave to investigate a student complaint of race discrimination, disability discrimination, and using demeaning language in communicating with students. **Ex. A**, *Casper I.*"[1] TWU's investigation during Casper's paid leave substantiated that she failed to provide the student her approved accommodations and used demeaning language when communicating with students. *Id.* That lawsuit was dismissed by Judge Jim Johnson of the 431st Judicial District Court of Denton County on June 22, 2022, and Casper appealed the case to the Second Court of Appeals in Fort Worth, Texas on August 24, 2022. **Ex. B**, Notice of Appeal. Casper also filed a lawsuit against TWU in state court on November 11, 2023, alleging age discrimination and retaliation in violation of the Texas Labor Code.

This case centrally concerns an incident where Casper addressed a fellow faculty member in a rude manner during a faculty meeting discussion about the department's proposed mission, vision, and values statement on October 12, 2022. Dkt. 12, Amended Complaint, ¶¶ 44-48. Casper told the faculty member "you should read more." *Id.* at 45; **Ex. C**, October 12, 2022 emails. Casper was asked to clarify her statement, but she refused to do so. **Ex. C.** Immediately after the meeting, Casper sent emails to the faculty member and her Department Chair, Genevieve West, clarifying

[1] This court can take judicial notice of court records pursuant to Federal Rule of Evidence 201 at any stage of the proceeding. This document is also referenced in Casper's Amended Complaint and central to her claims, as she references the lawsuit and being removed from teaching responsibilities numerous times.

that she was referencing "wokeism" during the faculty meeting. *Id*. West responded it was not her viewpoint, but her unprofessionalism in expressing it that was problematic. **Ex. D**, October 13, 2022 emails. The faculty member filed a formal complaint against Casper with TWU's Director of Employee Relationships, Anthony Yardley. The University provided two letters to Casper on November 4, 2022, informing her that her service on university committees (that the other faculty member also serves on) was being paused while the University investigated the allegations of unprofessional conduct. Compl. ¶¶ 52, 85; **Ex. E; Ex. F**. Now, Casper claims that five separate individuals—most of whom were not even at the meeting—"cut her off before she could even finish her sentence." Dkt. 12, ¶ 1.

It is no coincidence that on October 19, 2022, shortly after her faculty meeting exchange, Casper filed an EEOC charge alleging age discrimination and retaliation between December 11, 2020, and February 5, 2021. See **Ex. G**, EEOC Charge. Casper claimed that her department chair had asked her when she was going to retire on several occasions, had subsequently limited the courses she was permitted to teach and purportedly removed her from the classroom. **Ex. G**. She asserted that this leave from teaching duties was in attempt to get Casper to retire and was ongoing because she was not assigned any courses to teach for Spring 2023. **Ex. G**.

Plaintiff's Amended Complaint also makes passing assertions that TWU took other additional adverse actions against her prior to her comment at the October 12, 2022 faculty meeting; however, Casper's causes of action only bring suit regarding TWU's response to her faculty meeting comment. *See* Dkt. 12, ¶ 1 (alleging that TWU improperly limited the courses she could teach and "steered students away from her courses"); *id*. ¶¶ 39-40, 91, 101 (alleging that in early 2021 TWU improperly removed Casper from all teaching assignments). Casper has been on paid administrative leave and relieved of teaching duties ever since February 2021, when she was placed on leave following the investigation into the aforementioned race and disability discrimination complaint made by a student; this was the primary subject of her first lawsuit against TWU, *Casper I*. **Ex. A.** To this day, Casper remains a tenured professor with full pay and

benefits. The only change to her status since the October 2022 faculty meeting incident is that as of November 4, 2022, Casper's service on university committees (that the other faculty member also serves on) has been paused. Dkt. 12, ¶ 57.

## II. Casper's Claims against the TWU Officials.

Casper filed this lawsuit against numerous TWU officials, asserting Section 1983 claims for retaliation and purported view-point discrimination in violation of the First Amendment. She sues each official in their official and individual capacities. Dkt. 12, ¶¶ 5-10.

Her Amended Complaint does not clearly indicate which, if any, claims are brought against Defendants in their individual capacities. Casper's case caption states that Defendants are being sued only in their official capacities, but the body of the complaint identifies the Defendants as being sued in both their individual and official capacities, without any further explanation. *Id.* at ¶¶ 5-10. It is also unclear what relief Casper is seeking (or can seek) from the Defendants in their individual capacities. Beyond vague (and at times conclusory) allegations collectively against all Defendants, Casper recites these factual allegations against specific Defendants:

1. **Carine Feyten** is Chancellor and President of TWU. Dkt. 12 ¶ 8. Casper speculates that Feyten approved pausing Casper's service on faculty committees pending investigation of the faculty complaint. *Id.* ¶ 50.

2. **Genevieve West** ("West") is the Chair of the Department of Language, Culture & Gender Studies of the University. Casper speculates that West carried out the pause on her committee service. *Id.* ¶¶ 50, 52, 61. Casper further speculates that West made "numerous attempts to push Casper out of her University employment." *Id.* ¶ 65. Casper asserts that right after Casper made her comment at the committee meeting that a colleague should "read more," West immediately tried to engage Casper in a verbal altercation. *Id.* ¶ 77. Casper emailed West shortly after the committee meeting incident, and West responded by email. **Ex. C; Ex. D**. West sent Casper a Notice of Investigation related to the faculty complaint lodged against her for unprofessional conduct. **Ex. E.**

3. **Abigail Tilton** is Dean of the College of Arts & Sciences and supervises West. *Id.* ¶ 7. Casper speculates that Tilton approved pausing Casper's service on faculty committees pending investigation of the faculty complaint. *Id* ¶¶ 50, 52.

4. **Katherine Antwi Green** is General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer for the University. *Id* ¶ 10. Green refused to comply with demands from Casper's counsel related to the faculty complaint investigation. *Id.* ¶¶ 60, 93, 106.

5. **Anthony Yardley** is the University's Director of Employee Relations, HR Compliance & Equity. *Id.* ¶ 9. Yardley sent Casper a Notice of Investigation related to the faculty complaint lodged against her for unprofessional conduct. **Ex. F**. Casper speculates that Yardley approved the pause on her committee service. Dkt. 12 ¶ 50.

## ARGUMENT & AUTHORITIES

### I. Standard of Review.

When a court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1); *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* Jurisdiction is "a threshold issue that must be resolved before any federal court reaches the merits of the case before it." *Perez v. United States*, 312 F.3d 191, 194 (5th Cir. 2002). Plaintiffs are required to submit facts through some evidentiary method to prove by a preponderance of the evidence that the trial court has subject matter jurisdiction. *Cell Science Sys. Corp. v. La. Health Serv.*, 804 Fed. Appx 260, 264 (5th Cir. 2020) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)) (cleaned up). The Court may consider any of the following in deciding a Rule 12(b)(1) jurisdictional challenge: "(1) the

complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). Matters outside of the pleadings can be considered in resolving a Rule 12(b)(1) jurisdictional challenge. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citation omitted).

Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid such dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. See *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)). However, for purposes of determining a Rule 12(b)(6) motion, the pleadings include documents attached to the defendant's motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to her claim." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). The court may also consider matters that are outside the pleadings if they are matters of public record. See *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir.2006) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir.1995)). Documents

contained in the EEOC's administrative record, such as the charge, are public records. *Crosby v. Philip Holdings, LLC*, No. H–12–01749, 2012 WL 5456360, at *2 n. 5 (S.D. Tex. Nov.7, 2012).

## II. Casper's official-capacity claims are jurisdictionally barred by sovereign immunity.

As recognized by the Eleventh Amendment, sovereign immunity deprives a federal court of jurisdiction to hear a suit against the State of Texas, its agencies, or its officials acting in their official capacities, regardless of the relief sought, unless sovereign immunity is expressly waived. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). Texas Woman's University is an arm of the State of Texas. *See* Tex. Educ. Code §§ 107.01 *et seq*. Because Casper's claims are brought against five employees of the University in their official capacity, Defendants enjoy sovereign immunity from these claims absent a waiver. Dkt. 12 at ¶¶ 6-10.

Casper's official-capacity § 1983 claims under the First Amendment are barred by sovereign immunity. *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020) (holding that sovereign immunity bars plaintiffs' First Amendment retaliation claim, because "Congress has not expressly waived sovereign immunity for § 1983 suits") (*quoting Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997)). Texas has not waived its federal court immunity from suit under civil rights statutes, and Congress has not abrogated state immunity for Section 1983 claims. *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). *Quern v. Jordan*, 440 U.S. 332, 340-55 (1979).

## III. Casper has not stated valid official-capacity claims falling within the *Ex parte Young* exception to immunity.

Casper's First Amendment claims could potentially proceed if the *Ex parte Young* doctrine is satisfied. *Ex parte Young* is an exception to the Eleventh Amendment's recognition of state sovereign immunity when the suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407,

413–14 (5th Cir. 2004). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotation omitted). Casper's official capacity claims do not fall within the *Ex parte Young* exception to Eleventh Amendment immunity for at least two reasons: (1) Casper has not sufficiently alleged any Defendant's connection to the alleged First Amendment violations; and (2) all of Casper's claims seek relief not available under *Ex parte Young* because she seeks retrospective relief or relief that would require an individual Defendant to affirmatively exercise his or her discretion in a certain way.

### A. Casper Does Not Allege a Sufficient Connection Between Any Defendant and Her Claims.

The Court must "first consider whether the plaintiff has named the proper defendant." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). As "the party asserting the jurisdiction of a federal court," Casper "bears the burden" of overcoming sovereign immunity—including by identifying a proper defendant. *St. Tammany Parish ex rel Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009). *Ex parte Young* explained that "it is plain that [the defendant] officer must have some connection with the [challenged] act, or else it is merely making him a party as representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. 123, 157 (1908). "A plaintiff must show that the defendant state actors have the requisite connection to the [challenged act] to remove the [sovereign immunity] barrier to suits brought in federal court against the State." *K.P.*, 627 F.3d 115, 124 (5th Cir. 2010) (cleaned up). "[A]bsent any allegations tying [defendants] to the specific decisions at issue, it cannot be plausibly inferred that [defendants] played any role in the decisions [the plaintiff] challenges as unconstitutional." *Haverkamp v. Linthicum*, 6 F.4th 662, 671 (5th Cir. 2021).

Here, Casper did not allege that any Defendant (other than perhaps, West), has a sufficient connection with the actions she asserts violated the First Amendment. As the Fifth Circuit recently

held, "absent any allegations tying [defendants] to the specific decisions at issue, it cannot be plausibly inferred that [defendants] played any role in the decisions [the plaintiff] challenges as unconstitutional." *Haverkamp*, 6 F.4th at 671. Other than naming the other Defendants as parties and speculating that they all "approved" pausing Casper's faculty committee roles, Casper's Amended Complaint is devoid of "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Casper's Amended Complaint merely alleges that "West and Yardley, joined by the Defendants and with approval of Tilton and Feyten, suspended Casper for trying to address 'wokeness' at the faculty meeting, even though she was interrupted." Dkt. 12, ¶ 50. But Yardley's notice of investigation did not pause Casper's committee service; it informed her that a complaint had been received and would be investigated. **Ex. F**. Furthermore, the naked allegation that Tilton and Feyten approved Casper's committee suspension also fails to adequately tie Tilton and Feyten to the decision at issue. *Haverkamp*, 6 F.4th at 671. Finally, Casper's Amended Complaint fails to tie Green's conduct to the committee suspension: Casper merely alleges that Green refused to comply with demands from Casper's counsel for documents and information related to the faculty complaint investigation, not that Green suspended Casper from committee service. Dkt. 12, ¶¶ 60, 93, 106.

Moreover, any argument based on these Defendants' general roles with the University is insufficient under *Ex parte Young*. E.g., *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020), cert. denied, 141 S. Ct. 1124 (2021). Casper must demonstrate that each defendant had a "particular duty" related to the specific actions Casper now challenges as violating the law. See *id*. (quoting *Morris*, 739 F.3d at 746); see also *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 674 (5th Cir. 2022). Nor can Casper rely upon a *respondeat superior* theory to show that her claims against a Defendant (such as Tilton or Feyten) fall within *Ex parte Young*'s narrow exception. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693 (1978). Based on the sparse factual allegations against each Defendant, Casper's First Amendment claims cannot be maintained

against most TWU Defendants. Therefore, Casper has not stated a valid claim against any Defendant that falls within this narrow exception.

**B. Casper Seeks Relief Not Available Under *Ex Parte Young*.**

Sovereign immunity bars all of Casper's claims against all the Defendants because Casper seeks relief that is not available under the *Ex parte Young* doctrine, which permits a court to "command[] a state official to do nothing more than refrain from violating federal law." *Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011). Casper's requested relief improperly seeks (1) a declaration that certain past activities were unlawful, (2) to impose an affirmative obligation on the TWU Defendants, and (3) to control their discretion.

First, the *Ex parte Young* doctrine "applies only to prospective relief" and "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 113 S. Ct. 684, 688 (1993). Casper seeks declaratory judgements that Defendants' past actions violated the First Amendment, Dkt. 12 at p. 17, but *Ex parte Young* does not permit a declaration that past actions were unlawful. *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 421 (5th Cir. 2020) (a retrospective declaration of rights is improper). Since Casper's claims seek retrospective declarations, all such claims should be dismissed.

Second, Casper's requests to bar the TWU Defendants from taking any adverse actions against Casper pursuant to the investigation into unprofessional conduct, to "restore Casper to full service on faculty and student organization advising committees, [] to restore Casper to a full course load to teach," and to give Casper more choice over her courses, are impermissible affirmative injunctions. Dkt. 12 at p. 17. *Ex parte Young* does not extend to allowing a federal court to order an official to exercise sovereign power by taking an official act. *Zapata v. Smith*, 437 F.2d 1024, 1026 (5th Cir. 1971); *see Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 242 (5th Cir. 2020) (citation omitted). That is because "if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of," then the underlying fiction of *Ex parte Young*

does not apply because the order "will require affirmative action by the sovereign." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 n.11 (1949); *Richardson*, 978 F.3d at 242; *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011); *Zapata*, 437 F.2d at 1025-26. As the Supreme Court has recognized, "seeking to obtain an order requiring [an agency director] to withdraw" an official action—in that case, "advice to the federal agencies"—is an order that "would require . . . affirmative action." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam). Casper improperly requests that the Court order affirmative relief rather than requesting that Defendants cease unlawful conduct: these requests do not fall within the *Ex parte Young* exception.

Third, even if a federal court may affirmatively order officials to perform some ministerial functions, it cannot order state officials to exercise the State's sovereign power by performing their discretionary duties in a particular way. *See Richardson*, 978 F.3d at 242. Courts "look to the 'substance rather than to the form of the relief sought.'" *Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (quoting *Papasan v. Allain*, 478 U.S. 265, 279 (1986)). *Ex parte Young* itself found there to be "no doubt that the court cannot control the exercise of the discretion of an officer." *Ex parte Young*, 209 U.S. at 158. And that has remained the law for over a century. *Richardson*, 978 F.3d at 241. Indeed, "[a]ny such relief would . . . raise[] serious federalism concerns." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1257 (11th Cir. 2020). Therefore, Casper's requests for prospective relief in the form of requiring that TWU Defendants permit her to teach courses (which are assigned at the University's discretion) and forbidding Defendants from exercising their discretion to investigate and take corrective action based on allegations of unprofessional conduct are barred by Eleventh Amendment immunity.

No authority states that removing the pause on a professor's committee service pending an investigation into unprofessional conduct is a form of prospective equitable relief that falls under *Ex parte Young*. Rather, removing the pause on Casper's committee service would not provide Casper with any form of relief *without* also imposing an affirmative obligation on the TWU Defendants and exercising control over their discretion, forms of prospective relief unprotected by

the *Ex parte Young* doctrine. *Off. for Prot. & Advoc. v. Stewart*, 563 U.S. at 255. Because Casper does not seek any form of prospective relief within the limited *Ex parte Young* exception, all of Casper's official-capacity claims against all Defendants are barred by sovereign immunity.

**IV. Casper has not stated a viable First Amendment retaliation claim.**

Casper has not stated a Section 1983 claim for First Amendment retaliation because she has not plausibly alleged that she suffered an adverse employment action or that she spoke as a citizen disassociated with her official duties. The Fifth Circuit treats employment cases alleging First Amendment retaliation differently from nonemployment cases. *See, e.g., Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (contrasting First Amendment retaliation cases in "employment" context with those brought by "an ordinary citizen."); *Slegelmilch. Pearl River Cnty. Hosp. & Nursing Home*, 655 F. Appx 235, 239–40 (5th Cir. 2016). To state a prima facie case for First Amendment retaliation in the employment context, a "plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016), *cert. denied sub. Nom.*, *Town of Ball v. Howell*, 137 S. Ct. 815 (2017).

**A. Casper Has Not Plausibly Alleged That She Suffered an Adverse Employment Action.**

The Fifth Circuit has long held that, for purposes of a First Amendment retaliation claim, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and [formal] reprimands." *Benningfield v. City of Hous.*, 157 F.3d 369, 376 (5th Cir. 1998); *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) ("[T]his court has required something more than" "trivial acts of retaliation."); *Colson v. Grohman*, 174 F.3d 498, 510, 513 n.8 (5th Cir. 1999) ("[A] plaintiff must cross a certain threshold of harm before [he] can bring a claim for First Amendment retaliation" because not all "disadvantages imposed for the exercise of First Amendment freedoms constitute actionable retaliation.").

The Fifth Circuit has "declined to expand the list of actionable actions," *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Bennefield*, 157 F.3d at 376), and has never applied the broader Title VII definition of "adverse employment action" to First Amendment retaliation cases. *See Gibson v. Kilpatrick*, 734 F.3d 395, 400 n.4 (5th Cir. 2013), *cert. granted, judgment vacated on other grounds*, 573 U.S. 942 (2014); *Depree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009). Indeed, the Fifth Circuit has expressly held that the following actions "do not, either individually or collectively, constitute adverse employment actions": suspension with pay, investigations, criticisms, false accusations, non-punitive transfers to another department, public reprimands that were subsequently withdrawn by the employer, and polygraph exams that do not have adverse results for the plaintiff. *Breaux*, 205 F.3d at 151–55, 157-58, 164 (police officer placed on paid administrative leave did not suffer adverse employment action); *Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 123 (5th Cir. 1991). Additionally, an investigation does not constitute an adverse employment action. *Pierce v. Texas Department of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994).

Here, Casper's First Amendment retaliation claims fail as a matter of law because Casper has not alleged an actionable adverse employment decision. Casper alleges that Defendants "punish[ed]" Casper for speech she made on October 12, 2022. Dkt. 12, ¶¶ 52, 104. But the University simply paused Casper's faculty committee service pending an investigation into allegations of unprofessional conduct. *See* **Ex. E**. The November letter makes clear that (1) Casper remains on paid leave; (2) the pause on her committee service is temporary and "administrative in nature" rather than punitive; and (3) Casper is still able to participate in scholarship activities. **Ex. E**. Even if the Court were to characterize this pause as a suspension with pay, the Fifth Circuit has expressly held that a suspension with pay and investigations do not constitute adverse employment actions for purposes of a First Amendment retaliation claim. *Breaux*, 205 F.3d at 164. Therefore, she has failed to state a First Amendment retaliation claim against any TWU official, and her claims should be dismissed.

### B. Casper Has Not Plausibly Alleged That She Spoke as a Citizen Disassociated from Her Official Duties on a Matter of Public Concern.

"[A] court must first decide whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment." *Howell*, 827 F.3d at 522–23. "Only speech made in one's capacity as a citizen is entitled to First Amendment protection." *Id.* at 523. If the employee was not speaking as a citizen on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. An "'employee's speech is made pursuant to his official duties when that speech is 'made in the course of performing his employment' whether or not that speech was specifically 'demanded of [the employee].'" *Anderson v. Valdez*, 845 F.3d 580, 595 (5th Cir. 2016) (quoting *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)). Whether Casper spoke ***as a citizen*** on a matter of public concern is a question of law to be resolved by the Court. *Graziosi v. City of Greenville*, 775 F.3d 731, 736 (5th Cir. 2015) (emphasis added).

Here, it is clear Casper's speech occurred in her capacity as a University employee pursuant to her university duties and was made in the course of her employment. Casper told a "fellow faculty member in a faculty meeting" that the faculty member "should read more." Dkt. 12, ¶¶ 44-45. It is undisputed that participation in such committee meetings was part of Casper's official duties at the time. *Id.* at ¶ 57 (participation in faculty committee meetings was among the employment "duties" of Casper). Thus, as a matter of law, Casper's comment at the committee meeting was made pursuant to her official duties, precluding a First Amendment retaliation claim. Furthermore, Casper's comment to a faculty member that "you should read more" did not pertain to a matter of public concern, since it was merely a terse, unexplained personal attack, precluding a First Amendment retaliation claim on that basis.

In addition to her comment at the committee meeting, Casper references emails she sent using her university email address about an hour after the faculty meeting to West and the faculty member she had told "should read more," asserting that she had been referencing "wokeism" during the meeting. Dkt. 12, ¶¶ 47, 78. In determining whether an employee's speech is made pursuant to her official duties, "one of the factors that we have considered is whether the employee's complaint was made within the chain of command or to an outside actor, such as a different government agency or the media." *Gibson v. Kilpatrick*, 773 F.3d 661, 670 (5th Cir. 2014); *see also Williams v. Dall. Indep. Sch.* Dist., 480 F.3d 689, 694 n.2 (5th Cir. 2007) ("This is not a case where [plaintiff] wrote to the local newspaper or school board with his athletic funding concerns."); *Graziosi v. City of Greenville*, 775 F.3d at 737 (holding police officer's posts on Facebook, while off duty and from her home computer, was speech made as a citizen). Here, Casper sent emails from her university email address to two faculty members that were present at the meeting regarding a discussion during the faculty meeting. Her emails were "within the chain of command" and not to any "outside actor." *Gibson v. Kilpatrick*, 773 F.3d at 670.

Casper cannot credibly allege that she spoke at the faculty committee meeting or sent the follow-up emails about her comments during the faculty meeting, from her university email address, as a private citizen rather than pursuant to her official duties and role with the university. Casper herself asserts that the emails were an explanation to fellow committee members right after a faculty meeting about a discussion that took place during the meeting. The email was "made in the course of performing [her] employment," *Anderson v. Valdez*, 845 F.3d at 595, so "the Constitution does not insulate [her email] from employer discipline." *Garcetti*, 547 U.S. at 421.

### C. The Balancing of Interests Strongly Favors the University's Decision to Pause Casper's Committee Service.

Even if Casper had plausibly alleged the first two prongs of her First Amendment retaliation claims (she has not), the University's interests in professional discussions during faculty meetings outweighs Casper's interests in this instance. The next step is to balance Casper's interest in speaking against "the interest of the State, as an employer, in promoting the efficiency of the

public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Kinney v. Weaver*, 367 F.3d 337, 362 (5th Cir. 2004) (en banc). In balancing these interests, courts consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (*citing Pickering*, 391 U.S. at 570–73). It is unnecessary "for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Graziosi*, 775 F.3d at 741 (quoting *Connick*, 461 U.S. at 152); *Craig v. Rich Tp. High School Dist. 227*, 736 F.3d 1110, 299 Ed. Law Rep. 377, 37 I.E.R. Cas. (BNA) 671 (7th Cir. 2013) (the court gives substantial weight to government employers' reasonable predictions of disruption). The extent to which the employee's speech touches on matters of significant public concern affects the level of disruption to the government that must be shown by the speech. *Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011).

Casper alleges that her interest "in discussing matters of public concern in the context of teaching and scholarship outweighs Defendants' interest in the efficient provision of services." Dkt. 12, ¶ 82. But Casper's statement to a fellow professor that "you should read more" did not touch on any matter of public concern: it was merely a short, unexplained personal attack. Nonetheless, even if the Pickering balancing test were triggered, Casper's statement at the faculty meeting per se impaired harmony among coworkers, did have a detrimental impact on close working relationships among participants in the committee meeting, did impede the performance of the committee members' duties, and did interfere with the regular operation of the committee. *Rankin*, 483 U.S. at 388. It resulted in the faculty member filing a complaint for unprofessional conduct against Casper. **Ex. E; Ex. F.** Thus, Casper's interest in making a short personal remark at the meeting, if any, was outweighed by the University's strong interest in avoiding disruption and the destruction of working relationships, which it attempted to rectify by pausing Casper's

committee service to investigate the incident. *Graziosi*, 775 F.3d at 741. As the follow-up emails indicate, Casper was cautioned about *how* she presented her disagreements (and viewpoints) during faculty meetings, not her disagreements or viewpoints themselves. **Ex. D**. The University's interest in having professional, productive faculty meetings, including that any disagreements are discussed in a professional, respectful manner, outweighs Casper's preference for blunt remarks that, at least in this instance, were perceived as a "condescending personal attack." **Ex. D**. Consequently, Casper's retaliation claim fails as a matter of law under the balancing-of-interests prong.

### D. Casper's Individual-Capacity First Amendment Claims Are Not Otherwise Cognizable.

To the extent that Casper alleges individual-capacity Section 1983 First Amendment retaliation claims, these claims are not cognizable for two additional reasons. First, Casper cannot obtain any of the relief she seeks from the Defendants in their individual capacities, given that the Defendants in their individual capacities have no authority to take actions related to their university roles and responsibilities, and Casper seeks injunctive relief only in the form of ordering Defendants to take actions pursuant to those roles.[2] Additionally, The individual-capacity First Amendment retaliation claims against most of the Defendants are not cognizable because Casper has not adequately alleged their personal involvement.

"[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). "In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Pronunier*, 801 F.2d 789, 793 (5th Cir. 1986). "Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any

[2] To the extent Casper is seeking monetary damages by her reference to "[s]uch other and further relief, general or special, at law or in equity, to which Casper may show herself justly entitled," Dkt. 12 at p. 17, the individual Defendants are entitled to qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). It does not appear at this time that monetary damages are being sought, so the qualified immunity defense has not been fully briefed, but it is hereby preserved.

theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). In *Iqbal*, the Supreme Court rejected a contention that government officials may be held liable in a Section 1983 suit merely because they had knowledge of or acquiesced in their subordinate's misconduct, stating that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." 556 U.S. at 677. "A supervisory official may be held liable under [Section] 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

For liability to attach to a supervisor for the actions of a subordinate, Section 1983 "requires more than a simple ratification of an impermissible act. . . ." *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982); *Hobart v. City of Stafford*, 916 F.Supp.2d 783, 799 (S.D. Tex. 2013) ("This Court is aware of . . . no cases that impose liability on a supervisor based on ratification."). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates*, 537 F.3d at 435). "It is facially evident that this test [for supervisory liability under Section 1983] cannot be met if there is no underlying constitutional violation." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006).

Here, Casper has not adequately alleged the personal involvement of Defendants in the allegedly retaliatory pause on Casper's committee service pending an investigation into alleged unprofessional conduct, other than perhaps West who issued Casper the letter. **Ex. E**. Casper names only Defendants West and Yardley as affirmatively participating in implementing the pause, speculating that the other Defendants ratified or approved of it. Dkt. 12, ¶ 50. But Yardley's letter did not impose a pause: it notified Casper that a complaint had been received and would be investigated. **Ex. F**. And since there is no supervisory liability or liability for ratification under Section 1983, the individual-capacity claims against most Defendants should be dismissed for this

additional reason. *Thompkins*, 828 F.2d at 303. *Bowen*, 669 F.2d at 988. In short, Casper's individual-capacity § 1983 First Amendment retaliation claims are not cognizable for at least three reasons: (1) Casper has not plausibly alleged a valid section 1983 First Amendment retaliation claim; (2); Casper cannot obtain any of the relief she seeks from the Defendants in their individual capacities, and (3) Casper has not adequately alleged the personal involvement of most Defendants for them to be personally liable.

**V. Casper Has Not Stated a Viable First Amendment Claim Based on Viewpoint Discrimination.**

Casper also attempts to bring a First Amendment claim based on content and viewpoint discrimination. Dkt. 12 ¶¶ 98-108. That claim is also not cognizable. Casper asserts that the pause on her committee service was based on an allegation of unprofessional conduct in connection with Casper's blunt comment to a coworker that "you should read more." *Id*. at ¶ 85. Those four words do not convey any viewpoint on a topic of public concern. The resulting administrative pause of Casper's committee service cannot be viewpoint discrimination since the alleged unprofessional conduct was a terse, unexplained personal attack that did not express any political viewpoint. Casper contradictorily asserts both that she "declined to engage in a verbal altercation with West" after West asked for clarification of her blunt comment, and that she had not been "allowed to provide her full statement." *Id*. ¶¶ 45-46, 85. Casper's assertion that she planned to address the topic of wokeness but did not complete her thought at the meeting does not retroactively transform Casper's unexplained personal attack into an expression of her political viewpoint regarding "wokeism." *Id*. Casper's Amended Complaint concedes that Casper did not refer to "wokeism" at all during the faculty meeting. *Id*.

Furthermore, Casper's subsequent explanatory emails do not retroactively transform her unprotected speech at the meeting into a broad political pronouncement. And Casper alleges no facts that would indicate the University paused her committee service because it disagreed with her viewpoint on wokeness. The letter pausing Casper's committee service did not express any disagreement with nor disapproval of Casper's viewpoint on wokeness, and Casper's subsequent

emails with faculty members did not either. **Ex. E, Ex. D**. They took issue with *how* Casper spoke to another faculty member, not the purported rationale underlying Casper's remarks. The recent *Hiers* case is therefore inapposite: it denied the defendant's motion to dismiss a viewpoint discrimination claim, because the plaintiff's termination letter specifically stated that "Hiers's employment at UNT was discontinued because his expression and viewpoint on microaggressions were 'not compatible with the values of [the math] department.'" *Hiers v. Bd. of Regents of the Univ. of N. Tex. Sys.*, No. 4:20-CV-321-SDJ, 2022 WL 748502, at *11 (E.D. Tex. Mar. 11, 2022). Here, Casper alleges no such facts that would support a finding of viewpoint discrimination.

This case also does not implicate academic freedom. The pause on Casper's committee service does not chill her political speech or impact her academic scholarship and writings. Casper is to continue her academic scholarship while her committee service is paused. **Ex. E**. Casper has not alleged that her scholarship includes topics related to "wokeism;" rather, she describes her expertise as in modern drama, Shakespeare, and poetry. Contrast Casper's situation, in which Defendants have never indicated that Casper would suffer any negative repercussions for publishing scholarship regarding wokeism, with the recent *Jackson* case. *Jackson v. Wright*, No. 4:21-CV-00033, 2022 WL 179277, at *7 (E.D. Tex. Jan. 18, 2022). There, the court explained why the university's actions chilled the plaintiff's speech: "Plaintiff can no longer publish scholarship in the Journal [of Schenkerian Studies] that he considers a trademark of his life's work, and if he took action to publish the work that is currently 'on ice,' he would face negative consequences imposed by UNT officials." *Id*. In *Jackson*, the plaintiff had "dedicated much of his 40-year career to studying Heinrich Schenker" and was a founding member and lead editor of the Journal of Schenkerian Studies. *Id*. at *1. Thus, the court found that the plaintiff had stated a viable claim for suppression of speech, because the university was preventing the plaintiff from continuing to engage in his chosen area of scholarship.

Here, Casper does not even allege that she has published scholarship regarding wokeism, let alone that TWU has interfered with such scholarship. Casper made a rude, terse statement to a

colleague at a committee meeting, and the University has discretion to determine the appropriate response to unprofessional communications. This Court should not substitute its judgement for that of the University in how to handle such an issue. *Wood v. Strickland*, 420 U.S. 308, 326 (1975) ("It is not the role of the [] courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion.").

### VI. ***Res Judicata*** **Bars Casper's Requested Relief Related to the Student Complaint and Paid Administrative Leave from Teaching Duties.**

Under Texas law, "[c]ollateral estoppel bars relitigation of an issue if a party seeking the benefit of a judgment proves (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *In re USAA General Indemnity Company*, 629 S.W.3d 878, 883 (Tex. 2021) (internal quotations omitted). Collateral estoppel "precludes the relitigation of identical issues actually litigated in a previous action, even though the subsequent action is based upon a different cause of action." *Wilhite v. Adams*, 640 S.W.2d 875, 876 (Tex. 1982). Texas state rules of collateral estoppel apply here, because "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738). Thus, if *res judicata* would preclude Casper's requested relief in a Texas state court, it would also preclude Casper's requested relief in federal court.

In her Amended Complaint, Casper requests that Defendants "refrain from taking any disciplinary, punitive, or other adverse actions against Casper… pursuant to the earlier suspension from teaching based on false accusations of disability discrimination and demeaning conduct," and that Defendants "restore Casper to a full course load to teach" and "restore Casper's ability to

choose the courses she wants to teach and regularly taught and not, through explicit or covert means, attempt to prevent her from teaching those courses." Dkt. 12, p. 17, ¶¶ 2(a), (b). These issues have already been litigated and are therefore barred by collateral estoppel.

All three elements of collateral estoppel are met as to Casper's request for relief related to the student complaint and paid administrative leave from teaching duties. First, the facts that Casper seeks to litigate, namely her "earlier suspension from teaching," were fully and fairly litigated in the original action. **Ex. A.** Full and fair litigation is a low standard, as "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481 (1982); *see also Citizens Ins. Co. of America v. Daccach*, 217 S.W.3d 430, 456 (Tex. 2007) (citing *Kremer*, holding that "to have a preclusive effect a prior judgment cannot be 'constitutionally infirm'"). There is no indication that minimum procedural requirements of the Due Process Clause were not met in the original state court proceeding. All issues decided in that case have therefore been fully and fairly litigated.

Second, the facts as to her suspension from teaching were essential to the judgment in the first action. A fact or issue is essential to the judgment if the judgment is dependent upon determinations of those issues. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 385 (Tex. 1985). Plaintiff's "earlier suspension from teaching" formed the basis of the first action, and thus any judgment made in that case must necessarily be dependent upon determinations of those issues. **Ex. A.** Third, since Casper was a party to the first action, the doctrine of collateral estoppel may be asserted against her. *See Sysco Food Services v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994) (holding "it is only necessary that the party *against whom* the doctrine is asserted was a party… in the first action"). Finally, Casper made an identical request

for relief related to the student complaint and paid administrative leave from teaching duties in her first action. **Ex. A.** at p. 24-27.

Casper has appealed her first action: insofar as Plaintiff believes the first action was wrongly decided, that is a matter for the Texas appeals court to which Casper has already appealed, not for this court. **Ex. B**. "A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review, and not by bringing another action upon the same cause." *Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 325 (1927). Therefore, Casper's requested relief related to the student complaint and paid administrative leave from teaching duties is barred by *res judicata* and must be dismissed on that basis.

## CONCLUSION & PRAYER

For all the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's claims against them and grant such further relief to which they may be entitled.

Respectfully submitted.

**BRENT WEBSTER**
First Assistant Attorney General
Performing the Duties of the Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER HILTON**
Chief For General Litigation Division

/s/ *David Miracchi*
**ALLISON M. COLLINS**
Attorney-in-Charge

Texas Bar No. 24127467
**DAVID MIRACCHI**
Texas Bar No. 24122084
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2120/ Fax: (512) 320-0667
allison.collins@oag.texas.gov
david.Miracchi@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF FILING AND SERVICE

On May 30, 2023, the undersigned attorney filed the foregoing document with the Clerk of the Court for the Eastern District of Texas and served a true and correct copy of the foregoing to the following in compliance with the Federal Rules of Civil Procedure.

**Christian Dennie**
FOX ROTHSCHILD LLP
Saint Ann Court
2501 N. Harwood Street, Suite 1800
Dallas, TX 75201
Ph: (214) 231 - 5745
Fax: (972) 404 - 0516
cdennie@foxrothschild.com

**COUNSEL FOR PLAINTIFF**

/s/ *David Miracchi*
**DAVID MIRACCHI**
Assistant Attorney General