FILED: 3/7/2022 11:28 AM
David Trantham
Denton County District Clerk
By: Velia Duong, Deputy

**CAUSE NO. 22-0364-431**

| | | |
|---|---|---|
| **VIVIVAN CASPER** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **DENTON COUNTY, TEXAS** |
| | § | |
| **TEXAS WOMAN'S UNIVERSITY, ABIGAIL TILTON (in her official capacity as Dean of the College of Arts & Sciences), SHANNON SCOTT (in her official capacity as Associate Dean of the College of Arts & Sciences), GENEVIEVE WEST (in her official capacity as Chair of Department of Language, Culture & Gender Studies), SYMONE OSIEKO (in her official Capacity as Director of Civility & Community Standards/Title IX Coordinator), CARINE FEYTEN (in her official capacity as Chancellor and President), CAROLYN KAPINUS (in her official capacity as Executive Vice President for Academic Affairs and Provost), AND KATHERINE ANTWI GREEN (in her official capacity as General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer)** | § | |
| | § | |
| **Defendants** | § | **431st JUDICIAL DISTRICT COURT** |

**PLAINTIFF'S FIRST AMENDED PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND APPLICATION FOR INJUNCTIVE RELIEF**

NOW COMES Plaintiff, Vivian Casper (hereinafter "**Plaintiff**" or "**Casper**"), and files her *First Amended Petition, Application for Temporary Restraining Order, and Application for Injunctive Relief* complaining of the acts and omissions of Texas Woman's University

EXHIBIT A

("**University**"), Abigail Tilton ("**Tilton**"), Shannon Scott ("**Scott**"), Genevieve West ("**West**"), Symone Osieko ("**Osieko**"), Carine Feyten ("**Feyten**"), Carolyn Kapinus ("**Kapinus**"), and Katherine Antwi Green ("**Green**")[1] (collectively "**Defendants**"). Casper respectfully shows this Honorable Court as follows:

## I. PARTIES

1. Plaintiff is an individual residing in Denton, Denton County, Texas.

2. Defendant University is a public educational institution and is funded by the State of Texas with its principal office located in Denton, Denton County, Texas. University has appeared in this case.

3. Defendant Tilton is the Dean of the College of Arts & Sciences of the University. Tilton may be served with citation at the Conference, Faculty Offices Building (CFO) on University's campus, Denton, Texas 76204, or wherever she may be found. Tilton is sued in her official capacity as the Dean of the College of Arts & Sciences of the University. Citation is hereby requested.

4. Defendant Scott is an Associate Dean of the College of Arts & Sciences of the University. Scott may be served with citation at the Conference, Faculty Offices Building (CFO) on University's campus, Denton, Texas 76204, or wherever she may be found. Scott is sued in her official capacity as an Associate Dean of the College of Arts & Sciences of the University. Citation is hereby requested.

5. Defendant West is the Chair of the Department of Language, Culture & Gender Studies of the University. West may be served with citation at the Conference, Faculty Offices

---

[1] Tilton, Scott, West, Osieko, Feyten, Kapinus, and Green shall collectively be referred to as "**Individual Defendants**".

Building (CFO) on University's campus, Denton, Texas 76204, or wherever she may be found. West is sued in her official capacity as the Chair of the Department of Language, Culture & Gender Studies of the University. Citation is hereby requested.

6. Defendant Osieko is Director of Civility & Community Standards/Title IX Coordinator of the University. Osieko may be served with citation at Jones Hall 101 on University's campus, Denton, Texas 76204, or wherever she may be found. Osieko is sued in her official capacity as the Director of Civility & Community Standards/Title IX Coordinator. Citation is hereby requested.

7. Defendant Feyten is Chancellor and President of the University. Feyten may be served with citation at the Administration, Conference Tower Building on University's campus, Denton, Texas 76204, or wherever she may be found. Feyten is sued in her official capacity as the Chancellor and President. Citation is hereby requested.

8. Defendant Kapinus is Executive Vice President for Academic Affairs and Provost of the University. Kapinus may be served with citation at the Administration, Conference Tower Building on University's campus, Denton, Texas 76204, or wherever she may be found. Kapinus is sued in her official capacity as the Executive Vice President for Academic Affairs and Provost. Citation is hereby requested.

9. Defendant Green is General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer of the University. Green may be served with citation at the Administration, Conference Tower Building on University's campus, Denton, Texas 76204, or wherever she may be found. Green is sued in her official capacity as the General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer. Citation is hereby requested.

## II. JURISDICTION AND VENUE

10. Venue is proper in Denton County, Texas as the transactions and all or a substantial part of the events or omissions at issue took place in Denton County, Texas.

11. Pursuant to TRCP 47(c), at this time, Plaintiff seeks non-monetary relief in the form of declaratory relief and injunctive relief. Defendants' acts and omissions constitute violations of the Texas Constitution and the United States Constitution and thus constitute ultra vires acts and omissions on the part of Defendants over which this Honorable Court has jurisdiction. Additionally, in accordance with *Ex parte Young*, the Individual Defendants are officials of the University who have some connection with the enforcement of the challenged acts that constitute ongoing violations of the United States Constitution.

## III. DISCOVERY LEVEL

12. Plaintiff intends to conduct discovery under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure.

## IV. BACKGROUND AND FACTUAL INFORMATION

13. In 1969, University hired Casper to serve as an Instructor in English. Casper was promoted to Assistant Professor of English in 1971 and earned tenure in 1978. In Casper's fifty-two (52) years serving the University, University's students, and the University family and community, Casper taught more than thirty (30) different undergraduate and graduate courses. Casper has also published numerous professional papers, articles, essays, and reviews and has spoken heavily throughout the United States on topics related to her research and scholarship. Additionally, Casper has served on numerous University committees and served as the faculty advisor and sponsor for student groups and organizations. For Casper's service and devotion to her students, Casper has been honored on multiple occasions including being recognized as a

"Favorite Faculty Member", *The Lasso* Pioneer Faculty of the Year 2010 Award, and multiple other awards and recognition. *See Exhibit 1-A.*

14. During the fall of 2020, Casper taught ENG 3203.02 – Advanced Grammar/Composition (the "**Course**"). The Course was a small class with only (4) students that was taught via Zoom in light of the COVID-19 Pandemic. Casper has always made it her practice to be heavily engaged with her students and to be a resource for her students. Student[2] was in the Course, but clearly struggled balancing her personal life with the rigors of the Course and other studies. As documented through multiple emails, Casper afforded Student multiple opportunities to be successful in the Course and, clearly, provided accommodations including the ability to record classes, additional time to complete assignments, quizzes, and exams, and offered additional time outside of class for tutorials. Casper often had to remind Student that extra time was allowed to complete course work in accordance with Student's accommodations.

15. On October 8, 2020, via email, Student thanked Casper for all of her efforts to assist Student and stated "You are an excellent professor! You can be a bit tough and stern, but I truly appreciate your corrections and insights." On October 27, 2020, via email, Student reached out to Casper needing "help with paper organization" and indicated "I keep making the same mistakes" and indicated Student was "confused". In return, Casper offered to meet with Student personally to assist with Student's development, but Student chose not to meet with Casper. On November 3, 2020, Student emailed Casper indicating Student was "overwhelmed" and was "grammatical[ly] incompeten[t]", but decided against attending class due to the purported need for a "mental health break." Casper quickly responded "[p]lease don't give up" and, further, encouraged Student to continue to work hard and to "slowly learn the material" to "become competent." Despite Casper's

[2] The individual who filed the *Complaint* alleged herein will be referred to as "**Student**" to protect Student's privacy.

encouragement, Student decided to stop attending the Course and did not take the final exam. Student received a grade of "F" in the course.

16. Initially, Student tried to submit a grade appeal (despite not attending classes and the final exam), but failed to properly submit the grade appeal. After failing to properly submit the grade appeal and despite admitting to being "grammatically incompeten[t]" and failing to attend the final exam, on December 17, 2020, Student filed *Texas Woman's University Academic/Administrative Complaint and Appeal Form* ("**Complaint**") alleging Casper exhibited racial discrimination, did not offer accommodations to Student, and demeaned students. *See Exhibit 1-B*. On February 26, 2021, Casper was removed from all of her classes and was told she could not be on University's campus or talk to anyone associated with the University. *See Exhibit 1-C*. At the time of receipt of this correspondence, Casper was not aware of the allegations made against her and was being punished without notice of any kind. Casper was shocked and amazed at the ambush and harsh treatment she received including stripping her of her teaching position, resources used for scholarly pursuits, and her supervisory role with student organizations.

17. On March 5, 2021, Casper received an email from Osieko, Director of Office of Civility and Community Standards/Title IX Coordinator of the University, indicating Casper would be made aware of "detailed information regarding the specifics of the allegation and from whom the complaint was received" during a meeting scheduled for March 11, 2021. During the March 11, 2021 meeting conducted via Google Meets, Casper was not provided "detailed information", but was told that Student made a complaint alleging racial discrimination, accommodations were not offered to Student, and Casper demeaned students. Casper now knows that Osieko was reading from the *Complaint.* Neither Osieko nor anyone else on the videoconference asked Casper a single investigatory question or sought any information from

Casper during the March 11, 2021 meeting. Subsequently, Casper was provided a copy of the *Complaint*. On March 18, 2021, Casper provided written documentation and emails responding to each assertion in the *Complaint* including evidence that Casper provided accommodations to Student and, actually, had to remind Student that accommodations were permitted under Student's academic plan.

18. On April 26, 2021, Casper's counsel wrote to Kimber Summers, Assistant General Counsel of the University, indicating that the University took punitive action against Casper on February 26, 2021 without providing proper notice and in violation of due process and due course of law. *See Exhibit 2-A*. University did not respond to such correspondence.

19. On May 7, 2021, as Casper was kept in the dark and separated from the University, Casper's counsel, on behalf of Casper, submitted a grievance to the University Office of General Counsel ("**Grievance**"). *See Exhibit 2-B*. The *Grievance* submitted on Casper's behalf set forth numerous due process violations, failure to provide proper notice, and failure to comply with University policies and procedures. University failed and refused to acknowledge the *Grievance*. No process was afforded to Casper.

20. Without ever interviewing Casper, on July 7, 2021, Osieko issued the *Investigation Outcome* ("**Letter 1**") and stated, in pertinent part, as follows:

> The Office of Civility Community Standards (OCCS) initiated an investigation on February 26, 2021 to address allegations of discrimination against a protected class, failure to provide approved accommodations to a student with a disability, and demeaning and derogatory treatment of students. Student, [redacted], submitted a complaint to the Chair of English, Speech and Foreign Languages, and the report was forwarded to OCCS for review. It is alleged that you discriminated against [redacted] on the basis of race, failed to provide approved accommodations, and acted in a manner that was demeaning to [redacted] during fall semester 2020.
>
> The investigation consisted of interviews with [redacted], Dr. Vivian Casper, Dr. Abigail Tilton, Dr. Genevieve West, Dr. Shannon Scott, Dr. Claire

> Sahlin, Ms. Crystal Hill, and [redacted]. Also, several emails and other documents were reviewed as evidence to reach an appropriate conclusion of the presented allegations.
>
> Based on the review of the allegation and evidence, the investigation revealed there was sufficient evidence to substantiate the allegation of discrimination based on disability and demeaning conduct towards students, in violation of University Policy, URP: V.17.e Campus Access for People with Disabilities, URP. III. 10.a Faculty Responsibilities, and URP: III.01.01.a.02 Professional Ethics for Faculty. However, there was insufficient evidence to substantiate the allegation of discrimination on the basis of race in violation of University policy.

*See Exhibit 1-D*. *Letter 1* references an interview of Casper. As noted above, Casper was never interviewed or questioned. Additionally, *Letter 1* does not indicate the purported actions or inactions attributed to Casper that allegedly violated any such University policy.

21. On July 19, 2021, University made its true intentions known. Casper's counsel, Dr. Michael Thad Allen, received a telephone call from Green, General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer of University. Green informed him the University will never allow Casper to teach at the University again. Green said she was reporting to Dr. Allen from the "highest levels" of the University. She, however, would not indicate the individual or individuals who made this decision despite Dr. Allen's pressing.

22. Out of nowhere, on October 4, 2021, University issued another *Investigation Outcome* ("**Letter 2**") drafted by Osieko that stated, in pertinent part, as follows:

> *Allegations*: It is alleged that Dr. Casper discriminated against [redacted] on the basis of race, failed to provide approved accommodations, and acted in a manner that was demeaning to [redacted] during fall semester 2020.
>
> *Findings*:
> 1. Based on the information provided, there is insufficient evidence to find that Dr. Casper engaged in discriminatory conduct on the basis of race in violation of the University Policy, Nondiscrimination Statement.
> 2. Based on the information provided, there is sufficient evidence to find Dr. Casper engaged in discriminatory conduct when she denied and strongly resisted to implement approved accommodations for students with disabilities.

> 3. Based on the information provided, there is sufficient evidence to find Dr. Casper engaged in demeaning conduct towards students when she used debasing language towards students.
>
> *Conclusion*: The concerns brought forth in this investigation stretch far beyond the concerns of [redacted]. Ample evidence, extending back 11 years, based on provided documentation, was given as a testament to a great concern for Dr. Casper's interaction with students during her career with Texas Woman's University. Based on the provided evidence, there were several instances in which Dr. Casper denied or resisted to provide approved disability accommodations for students other than [redacted]; resisted to adapt to the use of various technologies or teaching methods even if these changes were for the benefit of the student(s); and often used insensitive, unprofessional, dismissive and/or demeaning language when communicating with students. In accordance with such concerns, the following determinations have been made:
>
> > Based on the review of the allegation and evidence, the investigation revealed there was sufficient evidence to substantiate the allegation of discrimination based on disability and demeaning conduct towards students, in violation of University Policy, URP: V.17.e Campus Access for People with Disabilities, URP. III. 10.a Faculty Responsibilities, and URP: III.01.01.a.02 Professional Ethics for Faculty. However, there was insufficient evidence to substantiate the allegation of discrimination on the basis of race in violation of University policy.

*See Exhibit 1-E*. For the first time, approximately three (3) months after issuing *Letter 1* and after the purported conclusion of the review of the *Complaint*, Osieko stated "[a]mple evidence, extending back 11 years, based on provided documentation, was given as a testament to a great concern for Dr. Casper's interaction." There has never been another such complaint filed against Casper in her fifty-two (52) years of service to the University. Casper was certainly not provided with "evidence, extending back 11 years" and, thus, was not afforded an opportunity to refute any such purported "evidence". Additionally, any such purported "evidence" stemming from eleven (11) years prior was not referenced or addressed in the *Complaint*. Casper was never given notice of any allegations that "extend[ed] back 11 years".

23. Despite numerous attempts to gain an understanding of the basis for University's conclusory statements and purported findings, University still has not identified a single purported action or inaction that violated any student's rights. This review was designed to push Casper into retirement against her will. Casper has been told retirement is an attractive route moving forward to separate her from her role and position at the University.

24. Casper has remained resolute in her desire to ascertain the facts and evidence that purportedly support *Letter 1* and *Letter 2*. Casper and her counsel have informed the University of the numerous errors, omissions, shortcomings, and violations of Casper's rights. Casper has personally met with Feyten, Kapinus, and Green. All of the above-referenced administrators have failed and/or refused to inform her of the facts and evidence that purportedly support *Letter 1* and *Letter 2*. Additionally, none of the above-referenced administrators were willing to answer a single question about the investigation, why Casper was not presented with notice of purported allegations "extending back 11 years", why the *Grievance* was not considered or heard, and/or why Casper was not provided notice of allegations before being suspended. To this day, Casper has no clue why she was found to have allegedly violated a University policy and why she was removed from the classroom.

25. Casper's life's work has been educating students and working with students to achieve their goals. When Casper was removed from the classroom on February 26, 2021, Casper was shocked and dismayed. University and the Individual Defendants did not and continue to refuse to permit Casper to teach during the Spring 2021 semester, Fall 2021 semester, and Spring 2022 semester. For the Spring 2022 semester, there were six (6) courses being offered that Casper has experience teaching including ENG 1013.52, ENG 1013.53, ENG 1013.54, ENG 3023, ENG 3053, and ENG 3203.51. Despite Casper's requests to be reinstated and permitted to teach in the

classroom and/or online, University and the Individual Defendants have refused to allow Casper to do so. Tilton (the Dean of the college in which Casper teaches), Scott (an Associate Dean of the college in which Casper teaches), and West (the Chair of the department in which Casper teaches) have ignored Casper's request to return to the classroom. West has continuously made it her mission to push Casper into retirement. At this point, Casper has no role at the University, is not permitted to engage in her vocation, and is being pacified in an effort to force Casper into retirement. With the Fall 2022 course schedules being posted or soon being posted, it appears Casper will again not be listed as a professor for any class.

26. At the beginning of the Spring 2022 semester, Casper was subject to *Post-Tenure Performance Review* by the *Peer Review Committee* of the Department of Language, Culture, and Gender Studies. The *Peer Review Committee* gave Casper an overall rating of "Effective" and concluded Casper was "Effective" in all three (3) categories of Teaching, Scholarship, and Service. In the category of Teaching, it was noted that Casper "regularly…meets each and every student in her office in order to discuss the class examination", "regularly arranges for students to attend theatrical performances…[that] are relevant…to the course material", and "students who pass Dr. Casper's classes are well prepared to teach literature in their own classrooms…." In the category of Scholarship, it was noted that Casper is "active in terms of scholarship in her areas of specialty, particularly modern drama." In the category of Service, it was noted that Casper served as a "faculty advisor" and served on multiple "committees" before "she was removed from the classroom" in February of 2021 and, further noted, Casper "possesses a wealth of institutional memory and anecdotes." Despite receiving a strong *Post-Tenure Performance Review* acknowledging Casper is a vital member of the University family and community, University at

the behest of the Individual Defendants has refused to permit Casper to return to the classroom and take part in University activities and committees.

27. Despite treating Casper like a pariah and stripping her of her voice and her role at the University, on January 20, 2022, Tilton wrote a letter to Casper indicating she would receive and ultimately did receive a "merit award". The "merit award" of compensation was provided to Casper "on the basis of [Casper's] performance" in "recognition of [Casper's] valuable performance contribution…." Despite acknowledging Casper is "valuable" and deserving of a "merit award", Defendants have continued to prohibit Casper from having any role in the University, prohibit her from teaching, and have wholly failed and refused to permit Casper to be heard on the matters in this dispute.

## V. <u>CAUSES OF ACTION</u>

### A. Violations of Article 1, Section 19 of the Texas Constitution

28. Casper re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

29. Casper sets forth a claim for violation of the Article 1, Section 19 of the Texas Constitution. Article I, Section 19 of the Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of law of the land." University is a state educational institution funded by the State of Texas and, thus, is a governmental actor. Accordingly, it must provide employees, including a tenured professor like Casper, with due course of law. Casper has been stripped of her role as a professor and the role and duties of a tenured professor. Since February 26, 2021, Casper has had no role and is not permitted to teach or engage with students. Casper has presented a liberty, property, or other enumerated interest that is entitled to protection. When as here, a person's good

name, reputation, honor, and integrity is at stake, notice and an opportunity to be heard are essential. Casper has a right to engage in the common occupations of life. Despite being informed on multiple occasions that University was violating Casper's rights, University refused to acknowledge its shortcomings and, frankly, has never informed Casper of facts and/or evidence that resulted in purported findings and conclusions that Casper discriminated against and demeaned a student. The University is imposing a stigma on Casper or other disability that foreclosed her freedom to take advantage of employment opportunities. Accordingly, process was due to Casper.

30. Providing process to Casper requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Defendants were required to present notice of the charges against Casper, the evidence obtained, and to give the opportunity for Casper to rebut the evidence presented. As noted above, Casper was suspended on February 26, 2021 without knowledge of any complaint made against her and/or the circumstances of any complaint. Again, without knowledge of the complaint made against her, on March 11, 2021, Casper was required to meet with University administrators via videoconference to learn of the accusations, but no evidence was presented and no investigatory questions were posed to Casper. Casper immediately and adamantly denied any such allegations. On May 7, 2021, in accordance with University policies and procedures, Casper filed the *Grievance*, but University ignored the *Grievance* and refused to permit due course of law to Casper. Without presenting any evidence of any kind to Casper and without giving Casper an opportunity to refute evidence, *Letter 1* was issued without any supporting facts, details, or references to evidence. Despite Casper's request for supporting facts, details, and evidence, Defendants declined to provide the same and moved forward with further penalizing Casper. Then, without notice, on October 4, 2021, University issued *Letter 2* indicating "[a]mple evidence, extending back 11 years" supports the findings and conclusions set

forth in *Letter 2*. The *Complaint*, however, never made reference to any set of circumstances "extending back 11 years" and, thus, Casper was not provided notice of any such allegations. Casper was not given the opportunity to review or rebut any "evidence" that purportedly "extend[ed] back 11 years". Defendants failed to grant Casper the opportunity to be heard at a meaningful time and in a meaningful manner. Defendants acted arbitrarily and capriciously in their actions and omissions as and against Casper.

31. An action to protect a private party's rights against a state official who acted without legal authority is not a suit against the governmental entity and, thus, is not barred by governmental immunity. Governmental immunity does not preclude injunctive and declaratory remedies against government actors who violate constitutional provisions. A private litigant does not need legislative permission to sue the State for a state official's violations of state law including the Texas Constitution. It is clear in the State of Texas, in accordance with long standing Texas Supreme Court case law, that suit to require compliance with constitutional provisions is not prohibited by sovereign or governmental immunity. The Individual Defendants acted without legal authority or failed to perform ministerial acts in violation of the Texas Constitution and, thus, the acts of the Individual Defendants are not lawfully authorized acts of the sovereign or governmental actor. Casper hereby alleges, and supports with evidence, that Defendants' actions and omissions constitute violations of the Texas Constitution and, thus, denied her due course of law. As such, suit against the Defendants, including the Individual Defendants in their official capacities, is not barred by immunity. Casper does not seek monetary relief at this time.

**B. Violations of the Fourteenth Amendment of the United States Constitution**

32. Casper re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

33. Casper sets forth a claim for violation of the Fourteenth Amendment of the United States Constitution in accordance with 42 U.S.C. § 1983. The Fourteenth Amendment of the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." University is a state educational institution funded by the State of Texas and, thus, is a governmental actor. Accordingly, it must provide employees, including a tenured professor like Casper, with due process of law. Casper has been stripped of her role as a professor and the role and duties of a tenured professor. Since February 26, 2021, Casper has had no role and is not permitted to teach or engage with students. Casper has presented a liberty, property, or other enumerated interest that is entitled to protection. When as here, a person's good name, reputation, honor, and integrity is at stake, notice and an opportunity to be heard are essential. Casper has a right to engage in the common occupations of life. Despite being informed on multiple occasions that University was violating Casper's rights, University refused to acknowledge its shortcomings and, frankly, has never informed Casper of facts and/or evidence that resulted in purported findings and conclusions that Casper discriminated against and demeaned a student. The University is imposing a stigma on Casper or other disability that foreclosed her freedom to take advantage of employment opportunities. Accordingly, process was due to Casper.

34. Providing process to Casper requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Defendants were required to present notice of the charges against Casper, the evidence obtained, and to give the opportunity for Casper to rebut the evidence presented. As noted above, Casper was suspended on February 26, 2021 without knowledge of any complaint made against her and/or the circumstances of any complaint. Again, without knowledge of the complaint made against her, on March 11, 2021, Casper was required to meet with University administrators via videoconference to learn of the accusations, but no

evidence was presented and no investigatory questions were posed to Casper. Casper immediately and adamantly denied any such allegations. On May 7, 2021, in accordance with University policies and procedures, Casper filed the *Grievance*, but University ignored the *Grievance* and refused to permit due process to Casper. Without presenting any evidence of any kind to Casper and without giving Casper an opportunity to refute evidence, *Letter 1* was issued without any supporting facts, details, or references to evidence. Despite Casper's request for supporting facts, details, and evidence, Defendants declined to provide the same and moved forward with further penalizing Casper. Then, without notice, on October 4, 2021, University issued *Letter 2* indicating "[a]mple evidence, extending back 11 years" supports the findings and conclusions set forth in *Letter 2*. The *Complaint*, however, never made reference to any set of circumstances "extending back 11 years" and, thus, Casper was not provided notice of any such allegations. Casper was not given the opportunity to review or rebut any "evidence" that purportedly "extend[ed] back 11 years". Defendants failed to grant Casper the opportunity to be heard at a meaningful time and in a meaningful manner. Defendants acted arbitrarily and capriciously in their actions and omissions as and against Casper.

35. An action to protect a private party's rights against a state official who acted without legal authority is not a suit against the governmental entity and, thus, is not barred by governmental immunity. Governmental immunity does not preclude injunctive and declaratory remedies against government actors who violate constitutional provisions. A private litigant does not need legislative permission to sue the State for a state official's violations of United States Constitution. It is clear in the Fifth Circuit, in accordance with long standing Fifth Circuit and United States Supreme Court case law, that suit to require compliance with constitutional provisions is not prohibited by sovereign or governmental immunity. Actions to restrain or enjoin

a government official from unconstitutional conduct is not barred by sovereign or governmental immunity. The Individual Defendants acted without legal authority or failed to perform ministerial acts in violation of the United States Constitution and, thus, the acts of the Individual Defendants are not lawfully authorized acts of the sovereign or governmental actor. Casper hereby alleges, and supports with evidence, that Defendants' actions and omission constitute violations of the United States Constitution and, thus, denied her due process of law. As such, suit against the Defendants, including the Individual Defendants in their official capacities, is not barred by immunity. Casper need only show "some connection" between Defendants and ongoing violations of her constitutional rights. Casper does not seek monetary relief at this time.

**C. Violations of the First Amendment of the United States Constitution**

36. Casper re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

37. Casper sets a claim for violation of the First Amendment of the United States Constitution in accordance with 42 U.S.C. § 1983. The First Amendment of the United States Constitution provides that there shall be "no law…abridging the freedom of speech." University is a state educational institution funded by the State of Texas and, thus, is a governmental actor.

38. Defendants violated Casper's First Amendment rights related to her communications and speech both inside and outside of the classroom. Casper was stripped of her opportunity to teach courses at the University and instructed not to come to University's campus or talk to or communicate with anyone associated with the University. University set forth disciplinary charges and took disciplinary action against Casper relating to her communications and the views she expressed. Defendants' actions have a chilling effect on free speech that violates the First Amendment of the United States Constitution and have made both implicit and explicit threats as

and against Casper that chill her First Amendment rights. The threats of punishment and actual punishment at the hands of Defendants deterred Casper, a person of ordinary firmness, from the exercise of her First Amendment rights. Further, Defendants wholly failed to permit and chilled Casper's speech by refusing to permit her to grieve the dispute at issue and refused to permit her to speak and challenge the findings set forth in *Letter 1* and *Letter 2*. Defendants have maintained that Casper remains under their "watchful eye" and will continue to monitor and punitively punish her for communicating and speaking both inside and outside of the classroom. Such actions and omissions are made with the goal of pushing Casper into retirement.

39. An action to protect a private party's rights against a state official who acted without legal authority is not a suit against the governmental entity and, thus, is not barred by governmental immunity. Governmental immunity does not preclude injunctive and declaratory remedies against government actors who violate constitutional provisions. A private litigant does not need legislative permission to sue the State for a state official's violations of the United States Constitution. It is clear in the Fifth Circuit, in accordance with long standing Fifth Circuit and United States Supreme Court case law, that suit to require compliance with constitutional provisions is not prohibited by sovereign or governmental immunity. Actions to restrain or enjoin a government official from unconstitutional conduct is not barred by sovereign or governmental immunity. The Individual Defendants acted without legal authority or failed to perform ministerial acts in violation of the United States Constitution and, thus, the acts of the Individual Defendants are not lawfully authorized acts of the sovereign or governmental actor. Casper hereby alleges, and supports with evidence, that Defendants' actions and omission constitute violations of the United States Constitution and, thus, chilled her rights under the First Amendment. As such, suit against the Defendants, including the Individual Defendants in their official capacities, is not

barred by immunity. Casper need only show "some connection" between Defendants and ongoing violations of her constitutional rights. Casper does not seek monetary relief at this time.

**D. Declaratory Relief**

40. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

41. In accordance with the Federal Declaratory Judgment Act and the Texas Uniform Declaratory Judgment Act, Casper seeks declaratory relief related to violations of the United States Constitution and Texas Constitution. Texas Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) reads in relevant part: "A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a) (stating "[a] court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed...."); 28 U.S.C. § 2201(a)(stating "may declare the rights and other legal relations of any interested party seeking such declaration…."). Casper seeks declarations pertaining to her rights. Casper seeks the following declarations: 1) Casper has a liberty, property, or other enumerated interest that is entitled to protection in her occupation; 2) University is required by law to afford Casper with due process of law; 3) University is required by law to afford Casper with due course of law; 4) University failed to provide Casper with due process of law; 5) University failed to provide Casper with due course of law; 6) University failed to provide Casper with proper notice of the accusations and allegations

set forth against her; 7) University failed to provide Casper with an explanation of the evidence the University had against her; 8) University failed to provide Casper the opportunity to be heard at a meaningful time and in a meaningful manner; 9) Casper's good name, reputation, honor, and integrity is at stake as a result of the claims and allegations set forth in the *Complaint* and the University's review of the same; 10) University has not informed Casper of facts and/or evidence that resulted in purported findings and conclusions that Casper discriminated against and demeaned Student; 11) University is imposing a stigma on Casper that foreclosed her freedom to take advantage of employment opportunities; 12) University was required to present notice of the charges and allegations against Casper, the evidence obtained, and present Casper the opportunity to rebut the evidence presented; 13) Casper was suspended on February 26, 2021 without knowledge of any complaint made against her and/or the circumstances of any complaint; 14) On March 11, 2021, Casper was required to meet with University administrators via videoconference to learn of the accusations in the *Complaint*, but no evidence was presented and no investigatory questions were posed to Casper; 15) On May 7, 2021, in accordance with University policies and procedures, Casper filed the *Grievance*, but University failed to hear the *Grievance*; 16) Casper was not afforded an opportunity to refute the findings and conclusions as set forth in *Letter 1*; 17) *Letter 1* was issued without any supporting facts, details, or references to evidence; 18) The findings and conclusions as set forth in *Letter 1* are null and void; 19) No disciplinary action of any kind is permitted against Casper pertaining to the findings and conclusions as set forth in *Letter 1*; 20) University declined to provide Casper with facts, details, and evidence supporting the assertions set forth in *Letter 1*; 21) *Letter 2* was issued without any supporting facts, details, or references to evidence; 22) The findings and conclusions as set forth in *Letter 2* are null and void; 23) No disciplinary action of any kind is permitted against Casper pertaining to the findings and

conclusions as set forth in *Letter 2*; 24) University declined to provide Casper with facts, details, and evidence supporting the assertions set forth in *Letter 2*; 25) *Letter 2* indicates there is "[a]mple evidence, extending back 11 years" supporting the findings and conclusions set forth in *Letter 2*, but no such evidence was presented to Casper; 26) The *Complaint* never made reference to any set of circumstances "extending back 11 years" and, thus, Casper was not provided notice of any such allegations; 27) Casper was not given the opportunity to review or rebut any "evidence" that purportedly "extend[ed] back 11 years"; 28) Any allegations and findings and conclusions stemming from the *Complaint* are null and void; 29) Defendants' actions and omissions have a chilling effect on Casper's free speech that violates the First Amendment of the United States Constitution; 30) Defendants' actions and omissions have violated Casper's rights under First Amendment of the United States Constitution; and 31) Defendants have made both implicit and explicit threats as and against Casper that chill her First Amendment rights.

42. The Texas Uniform Declaratory Judgment Act and Federal Declaratory Judgment Act waive immunity when challenges are made relating to constitutional provisions.

## VI. APPLICATION FOR TEMPORARY RESTRAINING ORDER AND APPLICATION FOR INJUNCTIVE RELIEF

43. Plaintiff incorporates Sections IV and V herein by reference as if such sections were incorporated herein verbatim. Plaintiff has identified a dispute and justiciable controversy regarding the respective parties' rights and obligations. Plaintiff is entitled to injunctive relief as and against Defendants.

44. Plaintiff seeks a temporary restraining order against Defendants. As indicated in this pleading and in the *Declaration of Dr. Vivian Casper* (attached hereto as *Exhibit 1* and incorporated herein by reference as if set forth herein verbatim) and the *Declaration of Dr. Michael Thad Allen, J.D.* (attached hereto as *Exhibit 2* and incorporated herein by reference as if set forth

herein verbatim), Plaintiff has alleged causes of action against Defendants, has shown a probable right of recovery and likelihood of success on the merits, has shown she will suffer imminent, irreparable harm without this Honorable Court's intervention, and has shown there is no adequate remedy at law. As a direct and proximate result of Defendants' wrongful actions as alleged herein, Plaintiff has suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protection of injunctive relief. More specifically, Plaintiff will be irreparably injured by the continued wrongful acts occasioned by Defendants' conduct.

45. The only adequate, effective, and complete relief to Plaintiff is to restrain Defendants from further engaging in certain proscribed activities as set forth below. Plaintiff seeks, upon hearing, a temporary injunction and permanent injunction ordering and immediately restraining Defendants, including Defendants' agents and servants, employers, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with him (collectively referred to herein as "**<u>Defendant Parties</u>**") as follows:

a. Enjoining Defendant Parties from using or enforcing any of the findings and conclusions as set forth in *Letter 1*;

b. Enjoining Defendants Parties and finding that the findings and conclusions as set forth in *Letter 1* are null and void;

c. Enjoining Defendant Parties from taking any punitive and/or disciplinary action(s) against Casper in relation to the findings and conclusions as set forth in *Letter 1*;

d. Enjoining Defendant Parties from using or enforcing any of the findings and conclusions as set forth in *Letter 2*;

e. Enjoining Defendant Parties and finding that the findings and conclusions as set forth in *Letter 2* are null and void;

f. Enjoining Defendant Parties from taking any punitive and/or disciplinary action(s) against Casper in relation to the findings and conclusions as set forth in *Letter 2*;

g. Enjoining Defendant Parties from finding and concluding that Casper violated any University policy or procedure pertaining to the allegations set forth in the *Complaint*;

h. Enjoining Defendant Parties and finding that the findings and conclusions relating to the *Complaint* are null and void;

i. Enjoining Defendant Parties from taking any punitive and/or disciplinary action(s) against Casper in relation to the findings and conclusions relating to the *Complaint*;

j. Enjoining Defendant Parties and requiring that Casper shall be afforded due process of law relating to the allegations, circumstances, findings and conclusions set forth in the *Complaint, Letter 1*, and *Letter 2*;

k. Enjoining Defendants and requiring that Casper shall be afforded due course of law relating to the allegations, circumstances, findings and conclusions set forth in the *Complaint, Letter 1*, and *Letter 2*;

l. Enjoining Defendants Parties from taking any action(s), both implicit and explicit, to chill and/or violate Casper's rights under the First Amendment of the United States Constitution;

m. Enjoining Defendant Parties from taking any action(s), both implicit and explicit, that violate Casper's rights under the Fourteenth Amendment of the United States Constitution; and

n. Enjoining Defendant Parties from taking any action(s), both implicit and explicit, that violate Casper's rights under Article 1, Section 19 of the Texas Constitution.

46. Absent this relief, Plaintiff will be irreparably injured. No remedy at law exists to adequately compensate Plaintiff for those damages. Accordingly, Plaintiff requests that no bond be required to be posted or, alternatively, that the bond be *de minimus.*

## VI. ATTORNEY'S FEES

47. Casper re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

48. As a result of Defendants' actions as addressed herein, Casper has been forced to retain the undersigned to represent her in this action and has agreed to pay the firm reasonable and necessary attorneys' fees and costs. Accordingly, Casper is entitled to and is seeking compensation

for reasonable and necessary attorneys' fees, costs, and witness fees incurred and to be incurred in connection with this litigation. In accordance with Section 37.009 of the Texas Civil Practice & Remedies Code, 42 U.S.C. § 1988, 22 U.S.C. § 2202 (through Tex. Civ. Prac. & Rem. Code § 37.009), and the principles of equity, Casper is entitled to seek and obtain attorneys' fees from Defendants. Pursuant to the usual and customary fees for a claim of this type, Casper is entitled to reasonable and necessary attorneys' fees for preparation and final trial of this case and additional attorneys' fees in the event of appeal or other proceedings before the Texas Court of Appeals and the Supreme Court of Texas.

## VII. CONDITIONS PRECEDENT

49. All conditions precedent to the relief being sought by Casper, in this matter, have been performed or have occurred.

## VIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that Defendants be cited to appear and answer and that, upon final hearing, Plaintiff be granted the following relief:

1. Plaintiff has judgment and findings issued that Defendants violated the provisions of due course of law as set forth in Article I, Section 19 of the Texas Constitution;

2. Plaintiff has judgment and findings issued that Defendants violated the provisions of due process of law as set forth in the Fourteenth Amendment of the United States Constitution;

3. Plaintiff has judgment and findings issued that Defendants violated the provisions of due process of law as set forth in the First Amendment of the United States Constitution;

4. This Honorable Court declares as follows: 1) Casper has a liberty, property, or other enumerated interest that is entitled to protection in her occupation; 2) University is required by law to afford Casper with due process of law; 3) University is required by law to afford Casper with due course of law; 4) University failed to provide

Casper with due process of law; 5) University failed to provide Casper with due course of law; 6) University failed to provide Casper with proper notice of the accusations and allegations set forth against her; 7) University failed to provide Casper with an explanation of the evidence the University had against her; 8) University failed to provide Casper the opportunity to be heard at a meaningful time and in a meaningful manner; 9) Casper's good name, reputation, honor, and integrity is at stake as a result of the claims and allegations set forth in the *Complaint* and the University's review of the same; 10) University has not informed Casper of facts and/or evidence that resulted in purported findings and conclusions that Casper discriminated against and demeaned Student; 11) University is imposing a stigma on Casper that foreclosed her freedom to take advantage of employment opportunities; 12) University was required to present notice of the charges and allegations against Casper, the evidence obtained, and present Casper the opportunity to rebut the evidence presented; 13) Casper was suspended on February 26, 2021 without knowledge of any complaint made against her and/or the circumstances of any complaint; 14) On March 11, 2021, Casper was required to meet with University administrators via videoconference to learn of the accusations in the *Complaint*, but no evidence was presented and no investigatory questions were posed to Casper; 15) On May 7, 2021, in accordance with University policies and procedures, Casper filed the *Grievance*, but University failed to hear the *Grievance*; 16) Casper was not afforded an opportunity to refute the findings and conclusions as set forth in *Letter 1*; 17) *Letter 1* was issued without any supporting facts, details, or references to evidence; 18) The findings and conclusions as set forth in *Letter 1* are null and void; 19) No disciplinary action of any kind is permitted against Casper pertaining to the findings and conclusions as set forth in *Letter 1*; 20) University declined to provide Casper with facts, details, and evidence supporting the assertions set forth in *Letter 1*; 21) *Letter 2* was issued without any supporting facts, details, or references to evidence; 22) The findings and conclusions as set forth in *Letter 2* are null and void; 23) No disciplinary action of any kind is permitted against Casper pertaining to the findings and conclusions as set forth in *Letter 2*; 24) University declined to provide Casper with facts, details, and evidence supporting the assertions set forth in *Letter 2*; 25) *Letter 2* indicates there is "[a]mple evidence, extending back 11 years" supporting the findings and conclusions set forth in *Letter 2*, but no such evidence was presented to Casper; 26) The *Complaint* never made reference to any set of circumstances "extending back 11 years" and, thus, Casper was not provided notice of any such allegations; 27) Casper was not given the opportunity to review or rebut any "evidence" that purportedly "extend[ed] back 11 years"; 28) Any allegations and findings and conclusions stemming from the *Complaint* are null and void; 29) Defendants' actions and omissions have a chilling effect on Casper's free speech that violates the First Amendment of the United States Constitution; 30) Defendants' actions and omissions have violated Casper's rights under First Amendment of the

United States Constitution; and 31) Defendants have made both implicit and explicit threats as and against Casper that chill her First Amendment rights.

5. This Honorable Court determines that Plaintiff should be granted a temporary restraining order and Defendant shall be temporarily and permanently enjoined as follows: 1) Enjoining Defendant Parties from using or enforcing any of the findings and conclusions as set forth in *Letter 1*; 2) Enjoining Defendants Parties and finding that the findings and conclusions as set forth in *Letter 1* are null and void; 3) Enjoining Defendant Parties from taking any punitive and/or disciplinary action(s) against Casper in relation to the findings and conclusions as set forth in *Letter 1*; 4) Enjoining Defendant Parties from using or enforcing any of the findings and conclusions as set forth in *Letter 2*; 5) Enjoining Defendant Parties and finding that the findings and conclusions as set forth in *Letter 2* are null and void; 6) Enjoining Defendant Parties from taking any punitive and/or disciplinary action(s) against Casper in relation to the findings and conclusions as set forth in *Letter 2*; 7) Enjoining Defendant Parties from finding and concluding that Casper violated any University policy or procedure pertaining to the allegations set forth in the *Complaint*; 8) Enjoining Defendant Parties and finding that the findings and conclusions relating to the *Complaint* are null and void; 9) Enjoining Defendant Parties from taking any punitive and/or disciplinary action(s) against Casper in relation to the findings and conclusions relating to the *Complaint*; 10) Enjoining Defendant Parties and requiring that Casper shall be afforded due process of law relating to the allegations, circumstances, findings and conclusions set forth in the *Complaint, Letter 1*, and *Letter 2*; 11) Enjoining Defendants and requiring that Casper shall be afforded due course of law relating to the allegations, circumstances, findings and conclusions set forth in the *Complaint, Letter 1*, and *Letter 2*; 12) Enjoining Defendants Parties from taking any action(s), both implicit and explicit, to chill and/or violate Casper's rights under the First Amendment of the United States Constitution; 13) Enjoining Defendant Parties from taking any action(s), both implicit and explicit, that violate Casper's rights under the Fourteenth Amendment of the United States Constitution; and 14) Enjoining Defendant Parties from taking any action(s), both implicit and explicit, that violate Casper's rights under Article 1, Section 19 of the Texas Constitution.

6. All reasonable and necessary attorney's fees;

7. All reasonable and necessary costs; and

8. Such other and further relief, general or special, at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted on the 7th day of March, 2022.

**BARLOW GARSEK & SIMON, LLP**
920 Foch Street
Fort Worth, Texas 76107
817.731.4500
817.731.6200 – Facsimile

BY: *_/s/ Christian Dennie_*
Christian S. Dennie
State Bar No. 24045775
cdennie@bgsfirm.com

***ATTORNEY FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

On the 7th day of March, 2022, the foregoing documents was served on all counsel of record in accordance with this Honorable Court's electronic filing system.

*_/s/ Christian Dennie_*
Christian Dennie
***Counsel for Plaintiff***