## United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| VIVIAN CASPER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| GENEVIEVE WEST, in her official | § | |
| capacity as Chair of Department of | § | |
| Language, Culture, & Gender Studies; | § | |
| ABIGAIL TILTON, in her official capacity | § | Civil Action No. 4:23-cv-42 |
| as Dean of the College of Arts & Sciences; | § | Judge Mazzant |
| CARINE FEYTEN, in her official capacity | § | |
| as Chancellor and President; ANTHONY | § | |
| YARDLEY, in his official capacity as | § | |
| Director of Employee Relationships, HR | § | |
| Compliance & Equity; and KATHERINE | § | |
| ANTWI GREEN, in her official capacity as | § | |
| General Counsel, Secretary of the Board of | § | |
| Regents, and Chief Compliance Officer, | § | |
| | § | |
| *Defendants.* | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Reconsideration (Dkt. #43) and Plaintiff's Opposed Motion for Leave to File Third Amended Complaint (Dkt. #50). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds as follows:

1. Plaintiff's Opposed Motion for Leave to File Third Amended Complaint (Dkt. #50) should be **GRANTED**; and
2. Defendants' Motion for Reconsideration (Dkt. #43) should be **DENIED**.

### BACKGROUND

This is a First Amendment retaliation case. The facts underlying this dispute are fully detailed in the Court's February 18 Memorandum Opinion and Order, which the Court

incorporates here by reference (Dkt. #42). However, given recent factual changes affecting the disposition of this case, below, the Court will recount those recent factual and procedural developments relevant to the instant Motion.

On January 7, 2025, Plaintiff Vivian Casper ("Casper") sent a written notice of retirement to Dr. Angela Bauer, Executive Vice President for Academic Affairs and Provost at Texas Woman's University ("TWU") (Dkt. #48-1 at p. 5). Her notice indicated that her retirement would be effective on January 31, 2025 (Dkt. #48-1 at p. 5). Nearly two months later, on March 4, 2025, Defendants[1] filed their Motion for Reconsideration, which asks the Court to reconsider its February 18 Memorandum Opinion and Order (Dkt. #42) due to Casper's recent retirement from TWU (Dkt. #43). This was the first time that the Court learned about Casper's retirement.

Defendants' Motion for Reconsideration argues that Casper's retirement from TWU renders her official capacity claims moot (Dkt. #43). Thus, Defendants urge the Court to reconsider its previous Order in light of the new evidence that Casper has since retired from teaching at TWU (Dkt. #43). According to Defendants, they "cannot discipline Casper, pause her committee services or teaching duties, or purportedly steer students away from Casper's courses now that Casper has retired" (Dkt. #43 at pp. 4–5). So, the argument goes, notwithstanding the Court's February 18 Order which rejected Defendants' mootness argument, Casper's claims for

---

[1] As defined in Casper's Second Amended Complaint (Dkt. #34), Defendants are (1) Genevieve West, the Chair of the Department of Language, Culture, & Gender Studies; (2) Abigail Tilton, the Dean of the College of Arts & Sciences; (3) Carine Feyten, the Chancellor and President of the University; (4) Anthony Yardley, the Director of Employee Relations, HR Compliance & Equity; and (5) Katherine Antwi Green, General Counsel, Secretary to the Board of Regents, and Chief Compliance Officer for the University. The Court will refer to them collectively as "Defendants."

injunctive relief are *now* moot because she is no longer employed with TWU (Dkt. #43 at p. 3). Consequently, Defendants ask the Court to dismiss Casper's claims as moot (Dkt. #43 at p. 6).

Unsurprisingly, Casper disagrees. She filed a Response in opposition on April 1, 2025 (Dkt. #48). In Casper's view, her claims for injunctive relief are not moot because her injury is ongoing (Dkt. #48 at p. 3). Namely, Casper argues that despite her recent retirement, Defendants continue to harm her by denying her emeritus status and its accompanying benefits (Dkt. #48 at p. 3). She alleges that Ashley Bender ("Bender"), the current interim Chair of Casper's former department, has blocked Casper from achieving emeritus status despite her qualifications (Dkt. #48 at p. 5). Thus, Casper also requests leave to amend her pleadings to add the factual allegations of harm that she contends she has suffered since her retirement (Dkt. #50). She further intends to amend her Complaint to replead her claims for declaratory relief and add Bender as a defendant (Dkt. #50). However, her new Complaint, as amended, abandons her requested Course Injunction and Committee Service Injunction (Dkt. #51 at pp. 18–19).[2] Thus, the only remaining requests for relief in her Amended Complaint are her request for nominal damages against Defendants in their individual capacities, a declaratory judgment that Defendants' ongoing behavior toward Casper violates the First and Fourteenth Amendments to the United States Constitution, and injunctive relief ordering Defendants to refrain from taking any adverse actions against Casper pursuant to the investigation detailed in the November 4, 2022 letters (Dkt. #51 at pp. 18–19).[3]

---

[2] As defined in the Court's February 18 Memorandum Opinion and Order, Casper's requested Course Injunction asks for the Court to enjoin Defendants from "steering students away from Casper's courses (Dkt. #42 at p. 30). Her requested Committee Service Injunction asks for Defendants to "restore Casper to full service on faculty including services on student organization advising committees, and to restore Casper to a full course load to teach" (Dkt. #42 at p. 30).

[3] The Court's February 18 Memorandum Opinion and Order defines this as the Disciplinary Injunction (Dkt. #42 at p. 30).

3

## LEGAL STANDARD

A motion seeking reconsideration may be construed under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances. "The Fifth Circuit recently explained that 'Rule 59(e) governs motions to alter or amend a final judgment,' while 'Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action.'" *Dolores Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). Further, "'[i]nterlocutory orders,' such as grants of partial summary judgment, 'are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires [pursuant to Rule 54(b)]." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)) (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 585, 862 (5th Cir. 1970)).

Because this is a motion seeking reconsideration of an interlocutory order, the Court uses Federal Rule of Civil Procedure 54(b). "Federal Rule of Civil Procedure 54(b) provides that, in a case involving multiple claims or parties, 'any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities or fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2018 WL 276154, at *4 (N.D. Tex. Jan. 3, 2018) (quoting FED. R. CIV. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive

law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

## ANALYSIS

As the Court previously explained, Defendants' Motion to Reconsider is premised on their belief that Casper's retirement has rendered her claims for prospective injunctive relief moot (*See* Dkt. #43). Casper, on the other hand, has raised a new set of facts that would suggest that her injury is ongoing, despite her recent retirement from TWU (*See* Dkt. #48). Yet the only way that Casper's newly alleged facts are of any consequence to the survival of her claims is if the Court grants her Motion for Leave to Amend (Dkt. #50). As explained herein, the Court will grant Casper's request.

### I.     Leave to Amend

The Court begins with Casper's request for leave (Dkt. #50). Through it, she seeks to amend her Complaint for a second time—this time, to add new factual allegations, another defendant, and amend the language in the declaratory judgment that this Court previously denied without prejudice (Dkt. #50; Dkt. #51). As explained below, the Court finds that Casper's Motion for Leave should be granted.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." As constructed, "the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (cleaned up) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). Thus, a court must have a "substantial reason" to deny a request for leave to amend a complaint. *Id.* Courts consider five factors in determining whether to deny leave

5

to amend: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *SGIC Strategic Glob. Cap., Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 428 (5th Cir. 2016).

Here, justice favors granting leave. Indeed, this case has drastically evolved since the turn of the new year, and Casper should be given the opportunity to assert the new facts that have arisen after her retirement from the University. She alleges an ongoing harm at the hands of her former employer for which she seeks redress (*See* Dkt. #50; Dkt. #51). Denying leave to amend at this stage would turn a blind eye to the many pertinent facts that form the basis of Casper's current claims for relief. The Court will not ignore those factual developments by denying leave. Accordingly, Casper's Motion for Leave to Amend her Complaint (Dkt. #50) should be granted.

## II.    Reconsideration

The Court turns to the dispute at hand. In short, the question is how Casper's new factual allegations bear on this Court's prior Memorandum Opinion and Order (Dkt. #42). The short answer is that they dramatically change the disposition of this case. Yet how exactly they affect the viability of Casper's claims necessitates a more fulsome discussion. To that end, the Court will examine the arguments Defendants raise in their Motion for Reconsideration, beginning with Defendants' mootness argument. Then, the Court turns to their sovereign immunity argument.

But first, a brief housekeeping point. Defendants argue that the Court should rescind its prior Memorandum Opinion and Order simply because the facts of this case have changed, and the Court has granted Casper leave to amend (Dkt. #49 at p. 5). Certainly, the facts of this case have changed—and dramatically, at that. But rescission is not warranted here. "A court has the power

to revisit prior decisions of its own in any circumstance." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) (cleaned up). However, that discretion is not an invitation for litigants to seek recission as a remedy for every foreseeable change in litigation. Indeed, "courts should be loathe" to revisit their prior decisions in the absence of "extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).

      The circumstances under which Defendants pray the Court rescind its prior Memorandum Opinion and Order are far from extraordinary. In fact, they are so foreseeable as to be regular in all respects. In short, Defendants' argument is that, given the existence of new facts, the Court's prior Memorandum Opinion and Order is toothless (Dkt. #49 at p. 5). Not so. To the contrary, the Court's prior decision was—and remains—anchored in the correct application of law to the facts of this case as they existed at that time (*See* Dkt. #42). New facts do not vitiate the Court's prior conclusions nor the analysis therein—even when a plaintiff drastically amends their complaint like Casper did here (Dkt. #51). If the emergence of new factual allegations in a case served as a proper basis for recission of a court's prior decisions, then the Court would be flooded with motions to reconsider prior opinions at each new stage in the litigation stream. That cannot be the case, and the Court declines to establish that precedent here. The Court detects no error in its prior analysis and no manifest injustice on the horizon. Therefore, the Court need not rescind its prior Order.

      The Court notes, however, that Defendants' Motion does not purport to highlight any error (*See* Dkt. #43). Instead, it simply claims that Casper's new Complaint should render the Court's prior Order a nullity (Dkt. #49 at p. 5). It seems probable that the reason Defendants seek

recission is simply because their deadline to appeal the Court's prior Order that denied them sovereign immunity fast approaches and Defendants would not want to waste resources appealing an Order predicated upon facts that are no longer in dispute (Dkt. #49 at p. 5) ("Plaintiff's evolving claims should be fully and thoroughly briefed to this Court prior to a decision on these Defendants' entitlement to sovereign immunity and qualified immunity or any concomitant appeal."). That makes sense, and the Court agrees. The new facts involved here necessitate new analysis. But as explained above, they do not warrant recission. Having determined that rescission is an improper remedy, the Court will continue to the merits of Defendants' Motion for Reconsideration.

      **A.**    **Mootness**

The Court starts with Defendants' argument that the case is moot. As seen below, the new facts fundamentally change the case—but they do not vitiate the Court's prior Memorandum Opinion and Order (Dkt. #42). In their Motion for Reconsideration, Defendants argue that Casper's official capacity claims for prospective injunctive relief are moot because she retired from TWU (Dkt. #43 at p. 3). The claims to which Defendants refer include Casper's requested Course Injunction, Committee Service Injunction, and Disciplinary Injunction (Dkt. #43 at p. 4). As discussed above, Casper no longer seeks a Course Injunction, nor Committee Service Injunction (*See* Dkt. #51 at pp. 18–19). She has abandoned those requests for relief via her Third Amended Complaint (*See* Dkt. #51 at pp. 18–19). Now, she only seeks declaratory relief, a Disciplinary Injunction, and nominal damages for her individual capacity claims against Defendants (*See* Dkt. #51 at pp. 18–19). Accordingly, for purposes of the instant mootness inquiry, the Court need only address the justiciability of Casper's requested Disciplinary Injunction. As the following discussion explains, her Disciplinary Injunction is not moot.

Article III of the United States Constitution limits jurisdiction of federal courts such that they may hear only "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. The Supreme Court has interpreted this limitation to require that "'a justiciable case or controversy . . . remain extant at all stages of review, not merely at the time the complaint is filed.'" *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) (quoting *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011)). When a controversy no longer presents a live issue, "or the parties lack a legally cognizable interest in the outcome," the case becomes moot. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). As a result, "[a] case that becomes moot at any point during the proceedings is 'no longer a Case or Controversy for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385–86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotations omitted)). "If a dispute has been resolved or if it has evanesced because of changed circumstances, including the passage of time, it is considered moot." *Am. Med. Ass'n v. Bowen*, 857 F.2d 267, 270 (5th Cir. 1988) (citing *Matter of S.L.E. Inc.*, 674 F.2d 359, 364 (5th Cir. 1982)).

Defendants claim that "[a] ruling on Casper's official capacity claims against the TWU Defendants will no longer have any bearing on Casper's present interests due to her retirement" (Dkt. #43 at p. 4). The Court disagrees. In her Third Amended Complaint, Casper seeks a Disciplinary Injunction, which she defines as:

1. A temporary restraining order, a preliminary injunction, and a permanent injunction ordering Defendants sued in their official capacities, their agents, officials, servants, employees, and any other persons acting on their behalf:
    a. To refrain from taking any adverse action against Casper pursuant to the investigation detailed in the November 4, 2022 letters, or pursuant to the earlier suspension from teaching based on false accusations of disability discrimination and demeaning conduct, or on the basis of Casper's protected speech.

9

(Dkt. #51 at p. 19). As the Court sees it, the ongoing "adverse action" for which Casper seeks injunctive relief is Defendants' interference with Casper's ability to be fairly considered for emeritus status—a process over which she claims Bender has direct authority (Dkt. #51 at pp. 12–13). In short, she seeks to remove the impediment to her full and fair consideration for emeritus status post-retirement (*See* Dkt. #51 at pp. 12–13, 19). Namely, Casper seeks to be considered for emeritus status like any other similarly situated professor, i.e., without regard to her view on "wokeism," which caused the root controversy in this case (*See* Dkt. #51 at pp. 12–13, 19). Thus, despite her retirement from TWU and the abandonment of her claims for injunctive relief related to her teaching duties, Casper's Disciplinary Injunction remains live and legally cognizable. *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies."); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (explaining that a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome") (internal citations omitted). Consequently, Casper's Disciplinary Injunction is not moot.

Practical considerations also support rejecting Defendants' mootness argument. Even a cursory glance at the prerequisites for receiving emeritus status suffices to defeat Defendants' argument (Dkt. #48-1 at pp. 8–9). According to TWU Regulation and Procedure Number URP 02.315, consideration of emeritus status requires:

1. 10 consecutive years of dedicated and loyal services as faculty members to Texas Woman's University;
2. a record of distinguished achievement as a teacher, scholar and/or academic innovator as recognized either within or external to the University;
3. nomination by one Texas Woman's University faculty member, with the nomination including three letters of internal or external support and a copy of the candidate's Curriculum Vitae;

10

    4.    endorsement in the home academic component by a simple majority vote of the current faculty; [and]

    5.    a single nomination within three years *after retirement from the University*.

(Dkt. #48-1 at pp. 8–9) (emphasis added). Upon satisfaction of the five requirements above, the candidate's name is then submitted to the TWU Board of Regents for a final determination (Dkt. #48-1 at pp. 8–9). Thus, a prerequisite for receiving emeritus status is retirement (Dkt. #48-1 at pp. 8–9). Therefore, Casper's claim could not possibly be ripe until she retired. *See, e.g.*, *Shields v. Norton*, 289 F.3d 832, 834–35 (5th Cir. 2002) ("A case or controversy must be ripe for decision, meaning that it must not be premature."); *Anderson v. Sch. Bd. of Madison Cnty.*, 517 F.3d 292, 296 (5th Cir. 2008) ("Generally, issues are not ripe if further factual development is required.") (internal citations omitted). Taking Defendants' argument to its logical limits, no retired professor could ever challenge an impediment to their receipt of emeritus status without that claim swiftly being dismissed as moot due to their retirement. By virtue of what emeritus status requires, that cannot be the case. And it is not the case here. Accordingly, Defendants' arguments to the contrary fall flat.

    **B.**    **Sovereign Immunity**

Next, the Court returns to the issue of sovereign immunity, which took up most of the real estate in the Court's prior Memorandum Opinion and Order (*See* Dkt. #42). Rest assured; the Court's analysis here will not be as extensive. A review of the parties' limited sovereign immunity briefing in Defendants' Motion for Reconsideration (Dkt. #43) and the subsequent Response (Dkt. #48) and Reply (Dkt. #49) suggests that Casper's newly alleged challenge to her lack of consideration for emeritus status invokes a completely new sovereign immunity question. Namely, whether Casper's *new* claim for relief is barred by the doctrine of sovereign immunity on these *new*

11

facts, with a *new* defendant. Certainly, the analysis the Court must perform is entirely different than that in its prior Order (Dkt. #42). The answer to this question depends on Defendants' (including Bender's) involvement, if any, in the emeritus nomination and voting process.

Through her Response to Defendants' Motion for Reconsideration and her Third Amended Complaint, Casper avers that she "remains beholden to Defendants' authority to grant her emeritus status" (Dkt. #48 at p. 4; Dkt. #51 at p. 13) (cleaned up). She specifically lists Bender as the person responsible for "block[ing] Casper from emeritus consideration because of Casper's professed disagreement with [Bender] over 'wokeism'" (Dkt. #51 at p. 13) (cleaned up). Yet the remaining Defendants' involvement in the emeritus process remains an unanswered question. Defendants, for their part, claim that "none of the TWU Defendants can award Casper emeritus status" or "quash a nomination for Casper to receive emeritus status" (Dkt. #49 at p. 3). But without the benefit of full briefing, the Court cannot thoroughly evaluate Defendants' alleged entitlement to sovereign immunity and whether the *Ex parte Young* exception still applies to save Casper's official capacity claims. Under these new facts, and considering Bender's addition as a new defendant, an entirely new sovereign immunity analysis is necessary, separate and apart from the analysis that the Court performed in its prior Memorandum Opinion and Order (*See* Dkt. #42). Additional briefing on the new sovereign immunity issue is warranted. Therefore, the Court will permit Defendants to file a new 12(b)(1) motion to dismiss to fully brief their sovereign immunity defense against Casper's official capacity claims under this new set of facts.

## CONCLUSION

The Court therefore **ORDERS** as follows:

1. Plaintiff's Opposed Motion for Leave to File Third Amended Complaint (Dkt. #50) is hereby **GRANTED** and her Third Amended Complaint (Dkt. #51) is deemed **FILED**; and

2. Defendants' Motion for Reconsideration (Dkt. #43) is hereby **DENIED**.

**IT IS SO ORDERED.**

 **SIGNED** this 17th day of April, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE